ROSENTHAL v. LIPSITZ.

1. EQUITY—CLEAN HANDS—PARTIES.
　　That party's hands may be unclean with respect to matters and persons not involved is not ground for denying relief. BUTZEL, NORTH, and FEAD, JJ., dissenting.

2. SAME—MORTGAGE BONDS—REIMBURSEMENT OF BOND HOLDER.
　　Corporation selling bonds secured by second mortgage, which took back bonds from purchasers when mortgagors failed to perform agreement, is entitled to lien for advances or disbursements, although it was guilty of misrepresentation in offering said bonds to the public. BUTZEL, NORTH, and FEAD, JJ., dissenting.

3. MORTGAGES—OPTION TO PURCHASE—REMEDIES.

   Party supplying money to finish building under agreement with builder, *held*, to hold legal title, and builder and his assigns to have right in nature of option to take over property by paying amount due.

4. ASSIGNMENTS—RIGHTS OF ASSIGNEES—NOTICE—PRIORITY OF LIEN.

   Rights of assignees, to whom builder assigned his rights under agreement with one furnishing money to complete building without his knowledge, are subsequent to latter's rights.

5. SAME—PRIORITY OF LIEN.

   Claim of one taking assignment of builder's rights under agreement with one furnishing money to complete building with notice of amount due thereunder is subsequent to said amount.

Appeal from Wayne; Smith (Henry H.), J., presiding. Submitted January 23, 1930. (Docket No. 22, Calendar No. 34,465.) Decided June 27, 1930.

Bill by David Rosenthal and another against Harry Lipsitz and others to remove a cloud from title of real estate. Cross-bills by defendants Lipsitz and other defendants against plaintiffs and other defendants to establish liens. Cross-bill by Harry R. Applebaum and another as interveners to establish a lien, to declare their several interests in the property; for an accounting, and other relief. From a decree for plaintiffs and denying relief to defendant Commercial National Company on their cross-bill, defendants appeal. Modified and affirmed.

*Bryant, Lincoln & Miller* and *J. Shurly Kennary* (*Beckenstein, Levin & Levin*, of counsel), for plaintiffs and cross-defendants.

*Frank Martin*, for defendants and cross-plaintiffs Lipsitz.

*A. Joseph Seltzer,* for defendants and cross-plaintiffs Commercial National Company and Henry Nau, Jr.

*Douglas, Barbour & Wing (Harold B. Desenberg,* of counsel), for defendants and cross-plaintiffs Posner and Sexton.

*Friedman, Meyers & Keys,* for cross-defendant Cass.

*Sempliner, Dewey, Stanton & Bushnell (Jason L. Honigman,* of counsel), for intervening defendants Applebaum.

Clark, J. Fineman, lacking funds, failed in attempting a large apartment building in Detroit. There were many creditors, among them Applebaum and his son. Fineman's part in the story ends with a sale of the lots and incompleted building and a deed by receiver. It was thought by some that there would be advantage in purchasing the property and finishing the building. This appealed to the Applebaums, who had already lost in the venture as creditors near $40,000. It also appealed to one Lipsitz, who became and continued active. He produced this litigation, although he put in none of his own money, if he had any. He began by attempting to limit bidding at the receiver's sale, and to become the purchaser. At the last moment his plans miscarried, as he could not raise the $10,000 required to be deposited with a bid. He conferred with the Applebaums. They bid the property in at $90,000. Lipsitz found Rosenthal. He was persuaded to go into the venture as a supplier of funds. He put up the $90,000 and took deed to himself. Lipsitz, a builder, was to finish the building. He and

Rosenthal made and signed a writing, purporting to define and determine their respective rights in the venture. The legal effect of the writing is one of the questions in the case. Lipsitz assigned to the Applebaums to secure them in his undertaking to make good their loss as stated. Lipsitz went on with the building. Rosenthal supplied funds, made advances and charges, and he and Lipsitz stated the account between them several times. Rosenthal, pursuant to agreement, mortgaged the property to S. W. Straus & Company of Chicago for $335,000. This is now the unquestioned first lien on the property. Lipsitz and Rosenthal arranged with Commercial National Company, a corporation dealing in second mortgages, to secure a second loan of $75,000 on the property and to sell bonds for that purpose. It sold some bonds, but took them back from the purchasers when the borrowers failed to perform their agreement. It asserts here a claim for its actual disbursements or advances under and because of this second mortgage.

Rosenthal mortgaged his interest in the property to Cass for $75,000. This mortgage was increased from time to time for the benefit of creditors, and now Cass is mortgagee for himself for nearly $75,000 and for others as trustee for nearly $50,000. Needing more funds, Lipsitz found Posner, an upstate merchant, in Detroit with considerable money. Posner loaned and continued to loan to Lipsitz until the total was nearly $90,000. Lipsitz assigned to Posner 70% of his interest under the agreement with Rosenthal, and he also assigned a 5% interest to Sexton. At the time of such assignment Lipsitz disclosed the amount due Rosenthal under the original agreement. Further detail is unnecessary, ex-

cept to say that Lipsitz made a deed, for security it seems, of the property, which deed was recorded. The building was completed and is producing income which is being sequestered under an arrangement of which no complaint is made. The amount claimed to be due Rosenthal is nearly $132,000, perhaps a little more than the amount due Cass, under the mortgage as stated.

Rosenthal did not and does not want the property. His position is the writing between him and Lipsitz gave Lipsitz option to purchase, and he has sought of Lipsitz and those claiming under him that they pay and take the property. This has not been done chiefly because of a dispute of priority.

Rosenthal filed this bill praying relief, in part to remove cloud from title. He, however, is willing, at least, to pass title and to accept the amount due him.

All parties in interest were brought in and heard. The chief and meritorious question was and is priority. The trial court found and decreed, subject to the Straus mortgage, the rights of the parties as follows:

*a.* Commercial National Company to have nothing for its disbursements under the second mortgage except nearly $900 which it had obtained from one acting as a receiver, and which, counsel consenting, it was permitted to keep.

*b.* Rosenthal is the owner of the property, that Lipsitz and those claiming under him are optionees, and that the amount due Rosenthal upon exercise of the option is $132,754.60.

*c.* "That the defendants Morris N. Posner, Lloyd J. Sexton and Harry Lipsitz, have the option

to take over the title to this property to themselves upon the payment on or before six months from the date of this decree of the sum of $132,754.60, with interest at 5% per annum from October 30, 1928, into the office of the clerk of this court for the benefit of David Rosenthal, Gerson Cass, or their assigns, as the records appear in the register of deeds office for Wayne county at the time of payment.

"Upon the payment of said amount into the office of the clerk of this court, as aforesaid, David Rosenthal and Bessie Rosenthal, his wife, will deliver a warranty deed to Harry R. Applebaum and Abram W. Sempliner, executors of the estate of Isaac Applebaum, and Harry R. Applebaum, conveying said property, free and clear of liens and incumbrances, subject only to the amount due on the Straus Company mortgage hereinabove referred to. The title to said property shall be and become the property of Harry R. Applebaum and Abram W. Sempliner, executors of the estate of Isaac Applebaum, deceased, and Harry R. Applebaum, or their assigns, unless payment is made by said Lipsitz, Posner and Sexton within seven months from date of this decree to said Isaac Applebaum Estate of the sum of $47,874.19, together with interest at 5% from October 30, 1928, and the further payment of $4,396.50 to Harry R. Applebaum within said time with interest at 5% from October 30, 1928.

"In the event that said Lipsitz, Posner and Sexton fail to pay the aforesaid sum to David Rosenthal within the period hereinbefore set forth, said Lipsitz, Posner and Sexton will have no further right, title or interest in or to said property.

"In the event that said Lipsitz, Posner and Sexton do not pay the sums as aforesaid to David Rosenthal within the period hereinbefore limited, Harry R. Applebaum and the estate of Isaac Applebaum have the option for a period of thirty days thereafter, to take over the title to this property to themselves upon payment, or before seven months

from the date of this decree, of the sum payable as aforesaid to David Rosenthal.

"Upon the payment of said amount into the office of the clerk of this court, David Rosenthal and Bessie Rosenthal, his wife, will deliver a warranty deed to said Applebaums conveying said property to them, free and clear of all liens and incumbrances, and subject only to the amount due on the Straus Company mortgage hereinabove referred to.

"If said Applebaums so purchase said property, said Lipsitz, Posner and Sexton will have no further right, title or interest therein.

"Defendants Lipsitz, Posner and Sexton are hereby decreed to be tenants in common of Lipsitz's contingent ownership in said property in the following proportions: Posner 70%, Lipsitz 25% and Sexton 5%. Either Lipsitz, Posner or Sexton may individually pay the sums of money required under the terms of this decree and acquire complete title as against the other tenants in common, unless such other tenants in common shall forthwith at the time of such payment advance their respective share or shares.

"The mortgage given by Harry Lipsitz and his wife to the Commercial National Company * * * (is) set aside and held for naught. * * *

"Upon the failure of Lipsitz, Posner and Sexton or the Applebaums to purchase said property and pay the amounts herein fixed for such purchase within the times herein stated, said Lipsitz, Posner and Sexton and Applebaums will have no further right, title or interest in or to said property."

From the decree entered Lipsitz and his assignees and Commercial National Company have appealed.

Relief to Commercial National Company, second mortgagee, was denied seemingly on the theory that it did not come into court with clean hands. Those to whom it sold bonds might perhaps have avoided the purchase, and in this respect it was open to cen-

sure. It took up the bonds. It was guilty of no fraud or misconduct with respect to the parties before the court, and its mortgage contract is not tainted with fraud or illegality. That its hands may be unclean with respect to matters and persons not here involved is not ground for denying relief. It is urged that this company breached the agreement in refusing to pay over money as provided by the mortgage agreement. Lipsitz or Rosenthal or both did not perform condition precedent to payment of the money and therefore the company was right in declining to pay. On full consideration of the matter urged in the briefs and on the matter urged we conclude the company has lien by second mortgage for the amount of its advances or disbursements, less payment made, in a sum of nearly $7,000, which may be fixed certainly on settlement of decree.

It is urged that the deed to Rosenthal and his agreement with Lipsitz constitute a mortgage, and that Rosenthal's remedy was foreclosure. It will do no good to set up the lengthy agreement. We are in accord with the trial court in holding Rosenthal to have legal title and Lipsitz and his assignees to have a right in the nature of an option to take over the property by paying the amount due Rosenthal.

We also approve equitable provisions of the decree by which Lipsitz and those claiming under him are afforded time and opportunity to take over the property. We are disposed to continue the time and the opportunity that there may be no substantial prejudice.

It is argued earnestly that the Applebaums should have priority over Rosenthal because of the assignment of Lipsitz to them. The weight of the

testimony is that Rosenthal had no knowledge of this assignment until after his advances and charges to Lipsitz under the agreement had been made, until the account had been completed and stated. Rosenthal knew the Applebaums were interested, but believed that Lipsitz had agreed to pay them out of mortgage bonds. It is argued that in the very structure of the case Rosenthal must have known of the assignment to Applebaums. There is force in the argument. But, on the other hand, it is altogether improbable that Rosenthal would have continued advances and charges to Lipsitz had he known of the assignment. We decline to disturb the finding of the trial court. Applebaums' rights are subsequent to those of Rosenthal.

Posner took assignment from Lipsitz, under which he claims, with full knowledge and notice of the account between Rosenthal and Lipsitz and of the amount due Rosenthal. He seeks a better position in respect of priority than that in which he placed himself. He has no just cause for complaint of the decree of the trial court.

In behalf of appellants or any of them we find no reason to change the decree respecting the amount due Rosenthal.

Other matter, considered, calls for no discussion. The decree will be modified as regards Commercial National Company as stated. Appeal requires further time and opportunity for performance of decree, which may be determined by counsel or upon settlement of decree.

Except as modified, the decree is in all things affirmed, with costs to Commercial National Company against plaintiffs, and with costs to plaintiffs against remaining appellants.

WIEST, C. J., and POTTER and SHARPE, JJ., concurred with CLARK, J.

BUTZEL, J. I am in full accord with the opinion and decree of the lower court, denying any relief to defendant Commercial National Company. The record shows that this defendant is in the business of making and selling second mortgages, for which it makes a large charge. It also, in this instance, secured for one of its allied companies a profitable contract for the renting and managing of the property in question. By making the entire mortgage bond issue become due in one year, the defendant avoided the necessity of securing the approval of the securities commission and having the interests of the public safeguarded thereby. However, in its mortgage it was very careful to provide that any renewal mortgage should retain priority over all liens subsequent to the date of the indenture in question. The mortgage ran to the defendant as trustee. The sales agreement was made with defendant which is asserting the claim. The mortgage was made by Lipsitz as mortgagor, and an additional agreement was entered into with Rosenthal in which he agreed to be bound by the terms of the mortgage in the event that Lipsitz did not obtain title. The sales agreement provided that in the event there was any difficulty over the title between Lipsitz and Rosenthal, the moneys were to be deposited with the Union Trust Company and disbursed by it in accordance with the agreements. The moneys were to be used for the completion of the building. Although defendant knew that the title was not vested in Lipsitz, the mortgagor, nevertheless it published a very alluring circular, with the legend "$75,000 Serial Gold Mortgage Notes," printed thereon in large letters. The circular described Lipsitz as the owner and mortgagor, and stated that defendant held title insurance issued

by the Union Title & Guaranty Company for the full amount of the mortgage, and that the insurance policy was on file at defendant's office. This was obviously untrue. It further edited and printed in its circular a confusing statement signed by Lipsitz in which he "estimated" that he and his wife have holdings, including the property in question, of $1,500,000, and that their net equities amount to $750,000; that they own a large number of Detroit apartment buildings. Defendant knew that Lipsitz did not have title to the property in question, and that there was difficulty in regard to it. Furthermore, it would not have required an exhaustive search to ascertain how little, if anything, Lipsitz owned. On the strength of this circular defendant proceeded to sell the bonds to the public. Thirty-two thousand and fifty dollars' worth of bonds were thus sold. The moneys realized therefrom were not deposited with the trust company as specified in the agreement, defendant claiming that waivers of liens were not secured. The record is not clear as to whether such waivers were a prerequisite to the depositing of the money with the trust company, or whether the moneys were to be paid out by the trust company upon waivers being presented. In any event, the moneys were a trust fund. Defendant, without any authority whatsoever, proceeded to invest this trust fund in other securities sold or dealt in by it. While it might have been advantageous for defendant, had it the legal right, thus to save interest and also make a profit on the sale of other securities, the record fails to show such right on its part to divert the moneys of bondholders, or to which plaintiffs might have become entitled. The defendant did not have the amount of the proceeds from the sale of the bonds on hand. It claims it

could have borrowed this amount from the bank if Lipsitz had become entitled to it. This does not excuse its conduct.

Defendant presented a claim for $8,569.23, on which it credited the sum of $995.99, the amount that had been paid to it by the allied company from the rents of the property. Counsel in the case consented that defendant be permitted to keep this amount, and the lower court therefore approved of it. We believe, however, that defendant is not entitled to the balance of its claim. In its statement presented to the court it not only charged for loss of profits, but also a large amount for such proportion of its general business overhead expenses as it allocated to these particular bonds. It further gave no credit whatsoever for the interest it received on the moneys through the reinvesting of the proceeds in other securities, nor for the profit it made in purchasing such other securities from itself with the money of the bondholders. Although not a single dollar was paid to the plaintiffs, or anyone else in their behalf, defendant as sales agent now claims profits and expenses. The defendant, as trustee, lost no principal or interest in the transaction, and as dealer, it received back all of its actual cash outlay, except part of the moneys paid for insurance in order to insure the property to the extent of the amount of its second mortgage. Had the policies been surrendered there would have been no loss for cash expenses whatsoever.

The lower court found the conduct of the defendant to be such as not to entitle it to equitable relief. I do not believe the decree in that regard should be disturbed. For this reason the decree of the lower court should be affirmed, with costs.

NORTH and FEAD, JJ., concurred with BUTZEL, J. McDONALD, J., did not sit.