McKEIGHAN v. CITIZENS COMMERCIAL & SAVINGS BANK
OF FLINT.

1. MORTGAGES—SETTING ASIDE DEEDS—VERDICTS AND FINDINGS—
EVIDENCE.
    In suit to declare a deed a mortgage and to set aside deed
    from alleged mortgagee to a third party, evidence supported
    finding of trial court that defendant purchasers from such
    third party were not *bona fide* purchasers nor holders of a
    mortgagees' interest.

2. SAME—TITLE—LIENS.
    A real-estate mortgage does not transfer title of the land to
    the mortgagee, but rather the mortgagee has a lien on the
    land to secure the debt.

3. SAME—DEED ABSOLUTE IN FORM.
    A deed though absolute in form may be shown to be a mort-
    gage.

4. DEEDS—CONTINUED POSSESSION BY GRANTOR AFTER RECORDING.
    Continued possession by a grantor of land long after deed to
    another is recorded is sufficient to raise a presumption that
    he has retained some right in the land.

5. MORTGAGES—TRANSFER OF NOTES.
    The right to a mortgage given to secure a note passes by trans-
    fer of the note.

6. SAME—TRANSFER OF MORTGAGE WITHOUT TRANSFER OF NOTE.
    The giving of a quitclaim deed by holder of mortgagee interest
    without assignment of the note secured by mortgage, in form
    a deed, was a nullity and conveyed no interest to the trans-
    feree binding upon the holders of the mortgagor interest.

7. EQUITY—CLEAN HANDS—FRAUD—CREDITORS.
    Fact that title to property was taken in the name of one person
    to avoid creditors of beneficial owner would not entitle de-
    fendants in suit to have deed declared a mortgage and to
    set aside deed given by mortgagee to deny relief on ground
    that plaintiff did not come into equity with clean hands where
    it does not appear that defendants were ever creditors of
    such beneficial owner.

8. Same—Clean Hands—Direct Relation of Misconduct to Transaction Involved.

Misconduct which will move a court of equity to deny relief must bear a more or less direct relation to the transaction concerning which complaint is made as relief is not denied under the "clean hands" doctrine because of the general morals, character or conduct of the party seeking relief.

Appeal from Genesee; Elliott (Philip), J. Submitted June 2, 1942. (Docket No. 13, Calendar No. 41,606.) Decided September 8, 1942.

Bill by John J. McKeighan and wife against Citizens Commercial & Savings Bank of Flint, Michigan, Elizabeth C. Stockton, Hallie Short, Freda Short, Leopold L. Pearson, Genesee County Treasurer, and Vernon J. Brown, Auditor General, Fred M. Greenstreet, and John A. Mustard, constituting the State Land Office Board, to have a deed declared a mortgage and for other relief. William H. McKeighan added as party plaintiff. Cross bill by defendants Short against plaintiffs McKeighan to be declared owners in fee of property, for an accounting and other relief. Decree for plaintiffs. Defendants Short appeal. Affirmed.

*Walter C. Jones* and *Maurine L. Jones,* for plaintiff.

*Joseph & Joseph,* for defendants.

SHARPE, J. This is a suit to declare a deed executed by John J. McKeighan and wife to the Citizens Commercial & Savings Bank of Flint a mortgage and to set aside a deed of the same property from the bank to Elizabeth Stockton.

Prior to 1926, William McKeighan had purchased 40 acres of land in the city of Flint for $20,000 and had given a mortgage to the vendor for part of the purchase price. In 1926, the mortgage was being foreclosed and at that time the balance due upon the mortgage was approximately $10,000. On April 6, 1936, John J. McKeighan, brother of William McKeighan, and Thomas Stockton borrowed money to pay off the mortgage from the Citizens Commercial & Savings Bank of Flint and executed a note to the bank. A deed to the property was given to John J. McKeighan and wife who then deeded it to the bank as security for the loan.

After the deed was given to the bank, payments were made to it on the note which was reduced to the sum of $4,600. Thomas Stockton died and on August 7, 1937, Mrs. Stockton paid the bank the balance due on the note out of the proceeds of an insurance policy which had been pledged to the bank to secure the loan. In October, 1938, the bank quitclaimed the property to Mrs. Stockton and also assigned the note to her. On November 2, 1939, Mrs. Stockton executed a quitclaim deed of the property to defendants Hallie and Freda Short in consideration of the sum of $500. The property was sold for unpaid taxes in May, 1938, and bid in by the State. The State's title became absolute on November 3, 1939, and the property was included in the lists of land to be offered for sale by the State land office board on February 13, 1940.

Plaintiffs John J. McKeighan, Alice McKeighan, his wife, and William McKeighan filed a bill of complaint in the circuit court of Genesee county to restrain the State land office board from issuing a certificate of purchase to any one other than the plaintiffs; they asked that the deed given to the bank be declared a mortgage; that the deed from the bank

to Mrs. Stockton be set aside; and that plaintiffs be declared the proper parties to purchase at the so-called scavenger sale to be held February 13, 1940.

Defendants Short filed an answer and cross bill in which they asked to be decreed the owners of the property subject to all unpaid taxes; or that an accounting be had and the mortgage foreclosed for the balance that might be found due on the same.

The cause came on for trial and the court decreed that John J. McKeighan is the owner of the premises; that he holds the lands as trustee for William McKeighan; that William McKeighan is the proper party to bid or meet the highest bid at the scavenger sale; that upon payment of $500 by plaintiff to defendants Short, they shall execute a deed of the premises to plaintiff John J. McKeighan.

Defendants Hallie and Freda Short are the only appealing parties. They claim that they are *bona fide* purchasers of the property; that at least, they hold a mortgagees' interest in the property; and that plaintiffs do not come into equity with clean hands.

On the question of appellants being *bona fide* purchasers, the trial court made the following finding of facts:

"On November 2, 1939, Hallie Short paid to Mrs. Stockton $500 and received from her a quitclaim deed. His purpose in making this purchase was to come within the term 'owner' above described, and thus be the one who could meet the highest bid within 30 days after the public sale, as above provided. At the time he made the purchase he heard from those who were living on the property that the McKeighans still owned it, or had an interest in it. He knew that John McKeighan had platted the property and recorded the plat after the warranty deed from John J. McKeighan and wife to the Citizens Commercial & Savings Bank was executed.

He knew enough to put him on his guard that the warranty deed of John J. McKeighan and wife to the Citizens Commercial & Savings Bank was for security only, or in other words was in reality a mortgage, though in form a warranty deed. He testified, 'I was buying what the record showed, irrespective of what I had learned.' And he testified that he believed he had a 'nuisance' value.

"There was some evidence that an agent of Hallie Short went to those living on the plat and who had purchased from the McKeighans, and told them that they would have to pay $1,200 cash to save their property."

The record supports the finding of the trial court that defendants Short were not *bona fide* purchasers of the property, nor do we think they hold a mortgagees' interest in the property.

The rule is well-settled that a real-estate mortgage does not transfer title of the land to the mortgagee, but rather the mortgagee has a lien on the land to secure the debt. In *Wells* v. *Park*, 233 Mich. 277, we said: "It is well-settled that a deed though absolute in form may be shown to be a mortgage by oral proof." In the case at bar, the deed from McKeighan to the bank was in effect a mortgage. All interested parties treated it as a mortgage. The McKeighans made payments on the loan from the bank, platted the property, sold some pieces on contract, paid some taxes assessed against the property, exercised control over it and in all ways considered themselves the owners subject to the indebtedness owing to the bank. In *Stevens* v. *Hulin,* 53 Mich. 93, we held that continued possession of the grantor long after the recording of his deed to another is sufficient to raise a presumption that he has retained some right in the land. In the instant case the only interest that the bank could convey to Mrs. Stockton was its mortgagee's in-

terest, but Mrs. Stockton did not assign the McKeighan note to defendants Short when she gave them a quitclaim deed of the property. It is clear that she had no intention of parting with the debt which was owing her by McKeighan.

In *Atwood* v. *Schlee*, 269 Mich. 322, we said:

"It is elementary law that the right to a mortgage, given to secure a note, passes by transfer of the note. *Ladue* v. *Railroad Co.*, 13 Mich. 380, 395 (87 Am. Dec. 759); *Jones* v. *Titus*, 208 Mich. 392. The assignment of the mortgage by Schlee, the mortgagee, to Zeleznik, after Schlee had indorsed the mortgage note over to the bank, was a nullity. *Ladue* v. *Railroad Co., supra*, 396."

The giving of the quitclaim deed to Hallie and Freda Short without an assignment of the note was a nullity and conveyed no interest in the property that would be binding on plaintiffs.

It is also urged by appellants that plaintiffs' bill should be dismissed for the reason that they did not come into equity with "clean hands." In support of this claim it is urged that William McKeighan transferred the land to his brother John J. McKeighan for the purpose of defrauding the creditors of William McKeighan. There is testimony in the record that in 1926 title to the property was taken in the name of John J. McKeighan to avoid the creditors of William, but there is no evidence that Hallie Short was at any time a creditor of William McKeighan.

The misconduct which will move a court of equity to deny relief must bear a more or less direct relation to the transaction concerning which complaint is made. Relief is not denied merely because of the general morals, character or conduct of the party seeking relief.

In *Rosenthal* v. *Lipsitz,* 251 Mich. 195, we said:

"Relief to Commercial National Company, second mortgagee, was denied seemingly on the theory that it did not come into court with clean hands. Those to whom it sold bonds might perhaps have avoided the purchase, and in this respect it was open to censure. It took up the bonds. It was guilty of no fraud or misconduct with respect to the parties before the court, and its mortgage contract is not tainted with fraud or illegality. That its hands may be unclean with respect to matters and persons not here involved is not ground for denying relief."

In the case at bar, the conduct of plaintiffs, of which appellants complain, is too far removed from the matters and persons here litigating to invoke the "clean hands" doctrine.

The decree of the trial court is affirmed, with costs to plaintiffs as against defendants Hallie and Freda Short.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., did not sit.