**Z & Z LEASING, INC., Plaintiff,**

v.

**GRAYING REEL, INC., Mill & Abrasive Supply, Inc., and Comerica Bank, Defendants.**

**No. 94–CV–73636–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 13, 1995.

Michael G. Jaron, Southfield, MI, for Z & Z and Walsh.

Christopher J. Valeriote, Kitch, Drutchas, Wagner & Kenney, P.C., Detroit, MI, for Graying Reel.

Frederick W. Heath, Bloomfield Hills, MI, for Mill & Abrasive Supply.

Thomas Van Dusen, Henry N. Carnaby, Bodman, Longley & Dahling, Troy, MI, for Comerica Bank.

---

**1.** Comerica Bank is the successor in interest to

## ORDER GRANTING DEFENDANT COMERICA BANK'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

This action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.* Plaintiff is seeking to recover damages for environmental contamination of property allegedly caused by defendants Graying Reel, Inc. and Mill & Abrasive Supply, Inc., prior owners of the property. Plaintiff has also asserted a similar claim under CERCLA against defendant Comerica Bank (Bank), which holds the first mortgage on the property. Now before the court is defendant Bank's motion for summary judgment. For the following reasons, the Bank's motion shall be granted.

### I. FACTS

On August 1, 1985, the Canton Township Economic Development Corporation issued industrial revenue bonds in the aggregate amount of $2,300,000. The bonds financed the acquisition and construction by Z & Z Leasing, Inc. (Z & Z) of a 70,000 square foot industrial facility on a six acre site located at 44052 Yost Road in Canton Township (the Property), as well as the acquisition of certain machinery and equipment. Z & Z acquired the Property from Mill & Abrasive.

To obtain bond financing, Z & Z was required to obtain a letter of credit. Manufacturers National Bank of Detroit (Manufacturers)[1] issued a letter of credit in the principal amount of $2,300,000, with Canton Township as beneficiary. Z & Z executed a Reimbursement Agreement dated August 1, 1985, agreeing to immediately reimburse Manufacturers any amount paid under the letter of credit, plus interest and attorney fees.

To secure its obligations under the Reimbursement Agreement, Z & Z executed a Security Agreement granting Manufacturers a security interest in any and all of its accounts receivable, inventory, machinery and equipment, as well as a mortgage on the Property, dated October 16, 1985.

Manufacturers by reason of merger.

In March, 1991, an environmental consultant with defendant Bank conducted a follow up environmental assessment which confirmed the presence of underground storage tanks (USTs) on the Property. The consultant collected a sample of a yellowish liquid from one of the USTs, which was later found to be a solvent and a hazardous substance.

In April, 1991, Z & Z defaulted on a bond payment. Manufacturers paid Canton Township $1,742,813.44 under the letter of credit. Manufacturers then immediately filed a civil action in Wayne County Circuit Court against Z & Z and Edmund J. Walsh, owner of Z & Z. The complaint sought immediate possession of the Z & Z collateral, including all machinery and equipment, and a judgment against Z & Z and Walsh, jointly and severally, for the full amount of the indebtedness.

On July 2, 1991, Z & Z, Walsh, and Manufacturers entered into a Settlement Agreement, requiring Z & Z and Walsh to maintain the Property and requiring compliance with applicable environmental law and regulations. The Agreement further provided that the Bank would loan Z & Z up to $15,000 to remove any USTs. However, any possible loan was subject to compliance by Z & Z with the terms and conditions of the Settlement Agreement. Manufacturers never took possession of the collateral.

By October 31, 1991, all of the machinery and equipment had been sold by Z & Z. The sales proceeds reduced Z & Z's indebtedness to $462,004.57. In accordance with the Settlement Agreement, Manufacturers extended payment of the remaining indebtedness. Monthly interest payments were required to begin on November 1, 1991, but Z & Z never made a single interest payment.

On July 9, 1993, Z & Z filed an action in Oakland County Circuit Court, asserting claims against Mill & Abrasive and Grayling Reel for environmental contamination of the Property; against its law firm for professional malpractice; and, against the Bank for breach of an alleged fiduciary relationship regarding sale of the machinery and equipment. The Bank filed a counterclaim against Z & Z, and a third party complaint against Walsh for recovery of the indebtedness still due under the Agreement. However, because of the possible environmental contamination of the Property, the Bank has never taken any action to foreclose its mortgage. All of the claims asserted by Z & Z in the Oakland County case were eventually dismissed. The Bank's claims against Z & Z and Walsh for recovery of the indebtedness are still pending.

Z & Z then filed this new action on September 19, 1994. Now pending before the court is the Bank's motion for summary judgment, arguing that the Bank is not liable for cleanup costs under CERCLA because it is neither an "owner," nor an "operator." Z & Z opposes the motion for summary judgment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"[T]he standard for determining whether summary judgment is appropriate is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co. Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510.

■ If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. *DISCUSSION*

■ CERCLA liability attaches if each of the following elements is established:

1) There is a release or threatened release of a hazardous substance;

2) at a facility;

3) causing the plaintiff to incur response costs; and,

4) the defendant is a responsible party as defined in § 107(a).

42 U.S.C. § 9607(a).

At issue in this motion is the fourth element, whether the Bank is a responsible party. Under 42 U.S.C. § 9607(a)(2), a responsible party is defined as:

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.

Further, under the Act, an owner or operator is defined as "any person," and any person is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States government, state, municipality, commission, political subdivision of the state, or any interstate body." *Id.* § 9601(20)(A) & (21).

■ However, CERCLA explicitly excludes from liability persons who "without participating in the management of a vessel or facility, hold indicia of ownership primarily

to protect securing interests in the vessel or facility." *Id.* § 9601(20)(A). Accordingly, it is not enough that the Bank holds the first mortgage on the Property to impose liability under CERCLA[2], and it is necessary to analyze the actual role played by the Bank in the management of the facility during the relevant time period. Plaintiff contends that the Bank, because of its participation in the management of the facility, is not able to avail itself of the safe harbor of the CERCLA secured lender exemption.

### A. *OWNER LIABILITY*

First, plaintiff argues that its claim of "owner" liability does not stem from whether or not the Bank has foreclosed on the mortgage. Instead, plaintiff asserts that the Bank not only holds indicia of ownership of the real property, but also of the underground storage tanks (USTs)[3] and the hazardous substances within them which have leaked. Plaintiff claims that the Bank's indicia of ownership of the USTs arose from its rights under the Security Agreement of 1985, the Wayne County civil action filed by the Bank in May, 1991, and the Settlement Agreement of July, 1991, along with the Consent Judgment.

The Settlement Agreement to the May, 1991, civil action provided to the Bank immediate possession of personal property not sold by plaintiff, unless plaintiff's indebtedness was reduced by the sale of some of its collateral to an amount below $487,500. Sett. Ag. ¶ 4. The Agreement further provided that, unless all the collateral was sold, a Consent Judgment would enter, in which Z & Z and Walsh would relinquish any right, title, interest, and possession to the remaining collateral. *Id.* However, by October 31, 1991, Z & Z had sold all of its machinery and equipment, and the sales proceeds reduced plaintiff's indebtedness to $462,004.57. Thus, the Consent Judgment never entered, and the Bank never took any action to foreclose its mortgage because of the possible environ-

---

**2.** In Michigan, a mortgage is a lien on real estate securing payment or performance of an obligation. *McKeighan v. Citizens Commercial & Savings Bank*, 302 Mich. 666, 5 N.W.2d 524 (1942). A mortgage does not give the mortgagee title to the property.

**3.** Plaintiff claims the a UST is a "facility," as defined by CERCLA, 42 U.S.C. § 9601(9).

mental contamination of the Property. Accordingly, plaintiff's argument that the Bank obtained indicia of ownership through the Settlement Agreement, etc. necessarily fails.

## B. *OPERATOR LIABILITY*

Next, plaintiff alleges that the Bank is an "operator" under CERCLA by virtue of having caused environmental surveys to be conducted on plaintiff's Property in January and March of 1991 in order to find contamination, having its environmental consultant remove the USTs from plaintiff's Property, and reporting the release of hazardous substances to the State of Michigan in December, 1991. On the other hand, the Bank claims that any action it has undertaken has been for the sole purpose of protecting its security interest, and that it has never been involved in any hazardous waste management practices or day-to-day operations of the Property to sufficiently incur liability under CERCLA.

Plaintiff contends that for "operator" liability to attach, it is sufficient to find that the Bank participated in the financial management of the facility to a degree which indicates that it had the *capacity to influence* the facility's treatment of hazardous waste. Pl. Br.Opp'n Def.'s Mot.Summ.J. at 11–12 (citing *U.S. v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991) (emphasis added)). However, this court does not adopt such a narrow interpretation of the statute because such an interpretation would largely eviscerate the exemption Congress intended to afford secured creditors. Thus, while declining to outline a specific standard for operator liability to attach, the court finds that the facts in this case do not warrant the imposition of liability.

The plaintiff first argues that it effectively transferred financial management of its operations to the Bank by agreeing in the Reimbursement Agreement of August 1, 1985, not to do the following without first obtaining written consent from the Bank:

a) Amend operative documents;

b) Merge or sell assets, etc.;

c) Incur indebtedness;

d) Guarantee obligations;

e) Purchase assets or stock;

f) Create or incur liens, etc.;

g) Make loans;

h) Purchase or lease fixed assets;

i) Purchase, redeem or acquire its capital stock;

j) Declare or pay dividends;

k) Purchase or hold securities, or make investments.

The court is not persuaded that, by imposing these negative covenants on plaintiff, the Bank assumed "operator" status under CERCLA. Secured lenders frequently have some routine involvement in the financial affairs of their debtors in order to insure that their interests are being adequately protected. To impose liability on the Bank in this case for including these negative covenants in the Reimbursement Agreement would be to punish the Bank for engaging in its normal course of business. Such activity does not constitute the requisite participation in the management of a facility. A secured creditor must be permitted to monitor any aspect of a debtor's business relating to the protection of its security interest without incurring liability.

Plaintiff next claims that the Bank was active in the environmental management of the facility due to its participation in the treatment of hazardous wastes. The participation plaintiff alludes to is: 1) the Bank's insistence that Z & Z and Walsh "comply . . . with all applicable environmental laws and regulations respecting the Premises," Sett. Ag. ¶ 11; and 2) the Bank's promise to advance the cost of removal, up to $15,000, of any UST on the Premises, provided Z & Z and Walsh were in compliance with the terms and conditions of the Settlement Agreement. *Id.* ¶ 12.

The court determines that the Bank's requiring plaintiff to abide by all applicable environmental laws does not constitute "operation" of the Property. Nor does the Bank's request for environmental investigation of possible contamination to the Property securing its interest constitute the requisite involvement necessary to incur operator liability. The record reflects that the Bank took prudent and routine steps to protect its

security interest only, and the court will not punish the Bank for its insistence that plaintiff obey the law.

## IV. *CONCLUSION*

For all of the above reasons, the court holds that defendant Comerica Bank is not liable under CERCLA for cleanup costs as either an owner or an operator. Accordingly, defendant Comerica Bank's motion for summary judgment hereby is GRANTED.

SO ORDERED.