# STATE OF MICHIGAN

# COURT OF APPEALS

---

DC MEX HOLDINGS, L.L.C.,

Plaintiff-Appellee,

v

AFFORDABLE LAND, L.L.C., and DALE B. FULLER,

Defendants-Appellants.

UNPUBLISHED
May 5, 2015

No. 318791
Oakland Circuit Court
LC No. 2011-122199-CB

---

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

Defendants appeal as of right a conditional consent judgment that preserved defendants' right to appeal the trial court's earlier order granting plaintiff partial summary disposition on the question of liability. Because we conclude that the trial court did not err when it granted partial summary disposition in plaintiff's favor, we affirm the judgment of the trial court.

This action arises out of a failed property development venture in Mexico. Plaintiff, DC Mex Holdings, L.L.C. ("DC Mex"), is an Arizona limited liability company owned by David Carter. Defendant, Affordable Land, L.L.C. ("Affordable Land"), is a Michigan limited liability company owned by defendant Dale Fuller. In December 2006, Carter and Fuller entered into a joint venture whereby their two companies, DC Mex and Affordable Land, agreed to form a limited liability company named Arimex America, L.L.C. ("Arimex America"). DC Mex and Affordable Land each owned a 50 percent interest in Arimex America. The purpose of the joint venture was to develop land in Mexico. An operating agreement was executed between DC Mex and Affordable Land. The parties agreed that Carter would live in Mexico to oversee the development of the property while Fuller remained in the United States assuming responsibility for the accounting and paperwork related to Arimex America and the later formed Mexican company identified as Arimex Properties SA de CV ("Arimex Mexico"). Arimex America held nearly a 100% ownership interest in Arimex Mexico.

In late 2006, with the aid of real estate brokers, Eddie Lee Ogden and Dan Kimple, Arimex Mexico purchased real property near Cabo San Lucas, Mexico (the "Cabo property" or "property"). After the purchase of the Cabo property, Arimex Mexico entered into an Irrevocable Development, Sales, and Marketing Services Agreement ("Services Agreement") with Ogden and Kimple on February 12, 2007. Pursuant to this Services Agreement, Ogden and

-1-

Kimple would receive a 15 percent commission on any future sales of the Cabo property. Ogden and Kimple were also granted powers of attorney through the Services Agreement. Without Fuller's knowledge or consent, Carter executed the Services Agreement as the representative of Arimex Mexico.

In December 2007, Kimple and Ogden located a buyer for a portion of the Cabo property, Tokase Properties, S de RL de CV ("Tokase"), and a purchase/development agreement was reached. Apparently, no translated version of this agreement is available, and the parties are somewhat vague in describing the full nature of the agreement. Pieced together from deposition testimony, affidavits, and assertions in the briefs, it appears that under the agreement two-thirds of the Cabo property was to be sold outright to Tokase, with the remaining one-third to be placed into a contemplated development trust, for which Tokase would serve as developer and seller of the trust-held land. As part of the overall arrangement, it was agreed that Ogden and Kimple's Services Agreement with Arimex Mexico would be terminated and that Ogden and Kimple would enter into a different commission agreement with Tokase. Consequently, Arimex Mexico, Kimple, and Ogden mutually agreed in writing to terminate the Services Agreement. The Termination Agreement specifically provided that Ogden and Kimple waived any claim for outstanding commissions and that their powers of attorney to act on behalf of Arimex Mexico were revoked. Fuller admitted that the Services Agreement was terminated and that this extinguished Ogden and Kimple's rights to any commissions. However, he claims that he did not become aware of the Termination Agreement until almost two years after the fact. We note, however, that Fuller's representative, attorney Jonathan Pikoff, signed the Termination Agreement on behalf of Arimex Mexico. Fuller specifically testified that Pikoff was his representative at the closing for the Tokase purchase, which is also the point in time when the Termination Agreement was executed.

In February 2008, Tokase decided not to complete part of the agreement with Arimex Mexico, given allegations of a breach and the inability of Arimex Mexico to cohesively negotiate issues that arose between it and Tokase, where Fuller and Carter presented conflicting positions to Tokase. Although Tokase cancelled the trust-related development component of the agreement that concerned one-third of the Cabo property, it continued to exercise its right to simply purchase outright the remaining two-thirds of the Cabo property. Thus, ultimately, Tokase became the owner of two-thirds of the Cabo property and Arimex Mexico retained one-third of the property; it is this one-third portion of the Cabo property that is pertinent to the instant dispute and about which the remainder of our discussion concerns.

On October 8, 2008, Kimple filed a lawsuit in Mexico seeking a $655,500 commission from Arimex Mexico based on the sale to Tokase. Kimple served this lawsuit on his partner Ogden. Ogden accepted service, purportedly on behalf of Arimex Mexico. Neither Ogden nor Kimple notified Carter of the lawsuit. The lawsuit was settled on December 10, 2008. Ogden apparently used his previously-revoked power of attorney (granted by the Services Agreement but revoked by the Termination Agreement) to settle the lawsuit on behalf of Arimex Mexico. Then, it appears that Ogden, purportedly as an Arimex Mexico representative, conveyed to his partner Kimple the one-third portion of the Cabo property still owned by Arimex Mexico as payment on the $655,550 judgment. Carter and Fuller were unaware of the Kimple commission lawsuit and of the Ogden transfer of title when it occurred. All parties agree that Kimple and

Ogden's conduct was fraudulent. Indeed, Fuller testified that Ogden and Kimple stole the property from them.

Sometime in December 2008, Fuller and Ogden spoke by phone. According to Fuller, Ogden requested that Fuller, on behalf of Arimex Mexico, sign a "lien" on the Cabo property, which would also include an acknowledgement that Ogden and Kimple were still owed $655,500 in commissions. Fuller agreed to this request and, further, he did not inform Carter of the events. Thereafter, Ogden sent Fuller a document to sign. Despite the fact that it was written in Spanish, that Fuller did not read or understand Spanish, and that he did not have an English translation of the document, Fuller signed the document on January 15, 2009. Fuller relied upon his attorney's verbal translation of the document. Fuller signed the document because he believed that Ogden and Kimple were entitled to commission payments pursuant to the Services Agreement, which he did not realize or believe had been terminated. The translated version of the document signed by Fuller indicated that the document was not, in fact, an acknowledgment of lien, but rather, a Settlement Agreement. For all practical purposes, this Settlement Agreement appeared to be a ratification by Fuller of the previous actions taken by Ogden and Kimple, including the conveyance of the property, and it also contained a 15-day statute of limitations. Fuller did not inform Carter of this agreement, nor did he request Carter's consent before signing the document. Fuller and Carter had been at odds with each other for some time and were not communicating.

In May 2009, during a title search, Carter discovered that Arimex Mexico's portion of the Cabo property had been conveyed by Ogden to Kimple six months earlier. Carter immediately investigated the possibility of initiating litigation in Mexico against Kimple and Ogden. Fuller refused to cooperate with Carter's efforts. Further, Fuller did not tell Carter about the lien that Fuller believed he had earlier granted to Ogden and Kimple.

In August 2009, Carter filed a lawsuit in Mexico on behalf of Arimex Mexico to regain possession of the Cabo property. Around this same time, and unbeknownst to Carter, Fuller met with Ogden and Kimple in Mexico. At the time of this meeting, Fuller, Ogden, and Kimple discussed a "Side Agreement." By virtue of this agreement, Kimple and Ogden would sell the Cabo property, which was now titled in Kimple's name, and retain $655,000 to cover their "lien." They would then pay off others who had outstanding liens against the property and, after that, a million dollars would be given to Fuller. According to Fuller, the money would go to him, and not Arimex Mexico, because Arimex Mexico no longer owned the property at that point. This Side Agreement was reduced to writing on September 23, 2009.

In addition to the foregoing agreement, at Kimple's request, Fuller also signed on October 8, 2009, a document, written in Spanish, that would effectively withdraw the lawsuit Carter had initiated on Arimex Mexico's behalf to restore ownership of the property. Fuller did not advise Carter of this event. Fuller testified that he signed the document because he had the Side Agreement with Kimble and Ogden. It appears that despite Fuller's attempt to dismiss the litigation initiated by Carter in Mexico, the lawsuit progressed to the point where a Mexican trial court actually reversed the transfer of title to Kimple. However, Kimple apparently appealed this ruling and a Mexican appellate court found on June 24, 2010, that Fuller's execution of the January 2009 Settlement Agreement on behalf of Arimex Mexico triggered the running of the 15-day limitations period that expired before Carter filed the lawsuit to set aside the Ogden-

Kimple transfer of title. Consequently, the Mexican appellate court reversed the Mexican trial court and dismissed Carter's lawsuit to set aside the transfer of the Cabo property to Kimple. Defendants agree that the ruling of the Mexican appellate court was based on the existence of the January 15, 2009 Settlement Agreement signed by defendant Fuller. As a result of these events, it appears that the Mexican court system has now conclusively determined that Kimple maintains valid title to the Cabo property (one-third of original land).

On October 5, 2011, plaintiff filed this action in the Oakland Circuit Court naming Fuller and his company Affordable Land as defendants. Plaintiff alleged fraud, willfully unfair and oppressive conduct in violation of MCL 450.4515(1) of the Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, and breach of several provisions of the Arimex America joint venture Operating Agreement.

On April 25, 2012, plaintiff moved for partial summary disposition with regard to liability. Plaintiff argued that there was no genuine issue of material fact related to whether defendants engaged in fraudulent and oppressive activity and whether defendants violated the terms of the Operating Agreement. In response to plaintiff's motion, defendants argued that: (1) the motion was premature because discovery was continuing; (2) plaintiff lacked standing to assert its claims because the entity, DC Mex, was not formed until after the operative events took place; (3) plaintiff's oppression claim was both time-barred and precluded on account of plaintiff's unclean hands; (4) with regard to the claim of breach of the Operating Agreement, questions of fact existed with respect to whether plaintiff was the first to breach the agreement; and (5) plaintiff's silent fraud claim failed as a matter of law because plaintiff could not establish that defendants had a legal duty to make any disclosures to plaintiff.

On September 20, 2012, the trial court issued its opinion and order granting plaintiff's motion for summary disposition on the issue of liability only. The court rejected defendants' argument that plaintiff's motion for partial summary disposition was premature because discovery was still open. The court noted that further discovery would not yield additional relevant facts. The court also rejected defendants' claim that plaintiff lacked standing to initiate the suit. The court found that there was sufficient evidence presented that DC Mex was organized in December 2006, well before the critical events occurred. Similarly, the court rejected defendants' assertion that plaintiff's claims were time-barred. With respect to plaintiff's oppression claim, the court found that there was no genuine issue of material fact that plaintiff had conclusively established that Fuller's conduct "resulted in the loss of the Cabo property, as the Mexican Court of Appeals reversed the trial court's decision to return the Cabo property to Mr. Carter and Defendant Fuller because of the January 15, 2009 Settlement Agreement."

With respect to plaintiff's claim that defendants breached the terms of the Operating Agreement, the court did not specifically find that defendants' actions constituted a breach of the parties' agreement. Instead, it only seemed to specifically address defendants' assertion that plaintiff could not establish that it had been damaged by defendants' alleged conduct. In this regard, the court reiterated its finding that it was "defendant Fuller's conduct that precipitated the loss of the Cabo property, as the Mexican Court of Appeals based its decision on the January 15, 2009 Settlement Agreement." With respect to plaintiff's claim that defendants' conduct constituted silent fraud, the court noted that defendants had a legal duty to disclose pertinent information to plaintiff related to the Cabo property because "Arimex America's Operating

Agreement obligated each member and manager to disclose relevant information about the disposition of Arimex America's sole asset." The court then found that Fuller did not disclose to plaintiff material information regarding the January 15, 2009 Settlement Agreement. The court ultimately concluded that there was no issue of fact "regarding whether information concerning the existence of the Settlement Agreement was material and the failure to disclose that information led to the loss of the property." Defendants' motion for reconsideration was considered and denied by the trial court on November 9, 2012.[1] Following the denial of reconsideration, this appeal ensued.

For their first argument on appeal, defendants contend that the trial court erred in granting summary disposition in plaintiff's favor on the silent fraud claim because, according to defendants, plaintiff failed to establish fraudulent intent (intent to deceive), detrimental reliance, and a causal connection between Fuller's actions or silence and the loss of the property.[2] We initially note that defendants failed to make this argument below; accordingly, it is not preserved for appeal and we need not review it. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444

_____

[1] In their motion for reconsideration, defendants asserted that the trial court failed to fully consider their argument that plaintiff was not entitled to any relief based on the doctrine of unclean hands. Defendants further argued that the court erred when it concluded that defendant Fuller's behavior resulted in the loss of the Cabo property. In this regard, defendants argued that it was improper for the trial court to rely upon the affidavit of the Mexican attorney interpreting the Mexican appellate court's ruling and on a woefully incomplete and unsworn translation of the Mexican court's opinion. Finally, defendants argued, for the first time, that the trial court erred "by neglecting to consider the economic loss doctrine in finding a legal duty from the contractual obligations contained in 'Arimex America's Operating Agreement' to uphold Plaintiff's silent fraud claim." Defendants argued that pursuant to the economic loss doctrine, an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation is established. In denying reconsideration, the trial court rejected defendants' argument that the court improperly considered an incomplete translation of the Mexican court's opinion, noting that defendants did not object to the validity or substance of the translated portion of the opinion, that the parties had agreed on the translator, and that defendants had not submitted evidence supporting a different interpretation or the opinion translated in its entirety. The court also rejected defendants' objection to its consideration of the Perez-Correa Affidavit interpreting the Mexican appellate court's opinion. The court noted that it did not rely on the affidavit when rendering its September 20, 2012 ruling. With respect to defendants' claim that the trial court failed to consider plaintiff's unclean hands, the court noted that defendants had not submitted evidence that Carter attempted to mislead or deceive the Mexican courts, which was the relevant inquiry when deciding the application of the unclean hands doctrine in this case. Finally, the court rejected defendants' assertion that the economic loss doctrine barred plaintiff's tort claim for silent fraud.

[2] We note that defendants do not renew an argument under the economic loss doctrine, see, e.g., *Neibarger v Universal Coops, Inc*, 439 Mich 512; 486 NW2d 612 (1992); therefore, our analysis will assume, without deciding, that there is no conflict with the doctrine.

Mich 211, 234; 507 NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review."). Regardless, on substantive review, the argument lacks merit. This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Latham v Barton Malow Co,* 480 Mich 105, 111; 746 NW2d 868 (2008). A motion for summary disposition under this court rule requires the reviewing court to consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Douglas v Allstate Ins Co,* 492 Mich 241, 256; 821 NW2d 472 (2012) (citation and quotation marks omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003).

Michigan recognizes "three interrelated fraud doctrines: (1) fraudulent misrepresentation, (2) innocent misrepresentation, and (3) silent fraud." *Barclae v Zarb,* 300 Mich App 455, 476; 834 NW2d 100 (2013) (citation omitted). A claim of fraudulent misrepresentation, also referred to as actionable fraud, generally requires a showing that:

> "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." [*Bergen v Baker,* 264 Mich App 376, 382; 691 NW2d 770 (2004) (citations omitted).]

By contrast, under the silent fraud doctrine, a cause of action can be maintained when there is a suppression of material facts, along with a legal or equitable duty to disclose those facts. *M & D, Inc v McConkey,* 231 Mich App 22, 35-36; 585 NW2d 33 (1998). Specifically, for silent fraud, a plaintiff must prove that the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions with the intent to deceive. *Roberts v Saffell,* 280 Mich App 397, 405; 760 NW2d 715 (2008). "A misrepresentation need not necessarily be words alone, but can be shown where the party, if duty-bound to disclose, intentionally suppresses material facts to create a false impression to the other party." *M & D, Inc,* 231 Mich App at 25.

It is undisputed that on October 8, 2008, unbeknownst to Carter and Fuller, Kimple filed a lawsuit in Mexico seeking a $655,500 commission from Arimex Mexico. Kimple and Ogden then engaged in a scheme that resulted in Kimple acquiring title to the Cabo property. Then, on January 15, 2009, Fuller signed the Settlement Agreement on behalf of Arimex Mexico that essentially ratified the unsavory actions of Kimple and Ogden. Fuller admitted that he did not inform Carter of the Settlement Agreement, nor did he request Carter's consent before signing the agreement. When Carter discovered in May 2009 that a portion of the Cabo property had been conveyed by Ogden to Kimple six months earlier, he contacted Fuller. Fuller admits on appeal that at this time he did not tell Carter about the lien that Fuller believed he had earlier granted to Ogden and Kimple. A chain of emails between Carter and Fuller sent in June and July 2009 support a finding that Fuller deceived Carter regarding the Settlement Agreement he had

signed in January 2009. Carter repeatedly inquired about pursuing an action against Kimple and Ogden to regain title to the property. In response, Fuller refused to cooperate in any such efforts, reiterated his distrust of Carter, and suggested that his interests were more aligned with Kimple and Ogden. Carter specifically stated that nothing was owed to Kimple and Ogden. In reply, Fuller disagreed. Entirely absent from the emails was any reference by Fuller to the Settlement Agreement that he had signed in January 2009.

It is apparent from this evidence that Fuller deceived and intended to continue deceiving Carter about the January 2009 Settlement Agreement. Moreover, Fuller did not simply remain silent, he continued the discourse regarding the issue over the course of several weeks during which time Carter took no action to regain possession of the property. Finally, in August 2009, Carter filed an action on behalf of Arimex Mexico against Kimple to regain possession of the property. Shortly thereafter, Fuller entered into what he testified was a side-deal with Kimple and Ogden that included an agreement that upon the sale of the property, Fuller would personally receive a million dollars, absent any monies flowing to Arimex America or Mexico, DC Mex, or Carter. In addition to this Side Agreement, Fuller also signed a document that would have effectively withdrawn the lawsuit Carter had initiated on Arimex Mexico's behalf to restore ownership of the property. Fuller candidly admitted in his deposition that he signed this document because he had the Side Agreement with Kimble and Ogden. Ultimately, a Mexican appellate court concluded that the Arimex Mexico lawsuit, initiated by Carter, was time-barred because it was not brought within 15 days of January 15, 2009, the day Fuller executed the Settlement Agreement and the date by which Fuller became aware of the suit filed by Kimple for his commission.

Considering all of this evidence, even when viewed in a light most favorable to defendants as required under MCR 2.116(C)(10), plaintiff established as a matter of law an intent to deceive, detrimental reliance, and a causal connection between Fuller's actions or silence and loss of the property. Defendants maintain that there was no intent to deceive or fraudulent intent because Fuller had not known about the Termination Agreement waiving the right to a commission and revoking the powers of attorney and because he thought that the Settlement Agreement merely pertained to a lien, not ratification of Ogden and Kimple's scheme. Defendants' argument essentially demands, improperly so, that we examine the Termination Agreement and Settlement Agreement in a vacuum and out of context, absent consideration of associated actions and events, including Fuller's silence in emails relative to the Settlement Agreement when Carter was voicing contemplation of a lawsuit to recover the property, Fuller's entry into the Side Agreement that completely froze out Carter, and Fuller's execution of a document attempting to secretly withdraw the suit Carter had initiated on behalf of Arimex Mexico. When examining the whole picture, reasonable minds would not differ that Fuller engaged in fraudulent conduct with an intent to deceive. Further, the undisputed facts revealed that as a result of Fuller's actions, Carter delayed taking measures that could have preserved Arimex Mexico's ability to recover the property and that such delay ultimately resulted in Kimple maintaining title to the property. Thus, detrimental reliance and a causal connection were established. Even defendants admit in their brief on appeal that the Mexican appellate

court found in Kimple's favor based on the Settlement Agreement, resulting in the loss of the property.[3]

Next, defendants argue that any contractual duties of disclosure were waived by Carter's own allegedly improper actions related to the Cabo property, e.g., selling lots without Fuller's knowledge. Defendants do not provide any authority for this proposition, but simply cite general contract principles regarding the manner in which written contracts can be modified. Defendants appear to be asserting that because plaintiff allegedly took unilateral actions early in the land development process, this somehow amounted to a mutual agreement to modify the contractual obligations of the parties. This issue was not specifically included in defendants' statement of the issues presented and, therefore, it is not properly before this Court. MCR 7.212(C)(5). Further, to the extent that defendants discuss this issue, they have not clearly explained how plaintiff's alleged actions amounted to a mutual agreement to modify the terms of the Operating Agreement. Consequently, we deem this issue abandoned. *Yee v Shiawassee Co Bd of Comm'rs,* 251 Mich App 379, 406; 651 NW2d 756 (2002). Moreover, the record does not contain "clear and convincing evidence" of conduct amounting to a waiver or modification of the terms of the Operating Agreement. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003).

To the extent that defendants are also arguing unclean hands, "[a] party seeking the aid of equity must come in with clean hands." *McFerren v B & B Investment Group*, 253 Mich App 517, 523; 655 NW2d 779 (2003). The clean hands doctrine closes the door of equity to a party tainted with inequitableness or bad faith with respect to the matter in which the party seeks relief. *Id.* at 523-524. The clean hands doctrine is rooted in the historical concept that courts of equity are vehicles for enforcing the requirements of conscience and good faith. *Isbell v Brighton Area Schools*, 199 Mich App 188, 190; 500 NW2d 748 (1993). Having unclean hands can bar a plaintiff from receiving equitable relief. *Id.* Given that this case primarily involves an award of money damages, i.e., legal relief and not equitable relief, the doctrine is inapplicable. See *Waldorf v Zinberg*, 106 Mich App 159, 165; 307 NW2d 749 (1981) ("defendants may not raise the equitable defense of unclean hands as to plaintiffs' request for a determination of their legal rights"). Furthermore, defendants have not adequately developed or briefed the argument, and we deem it abandoned. *Yee,* 251 Mich App at 406. In connection with this argument, we find interesting the following passage contained in defendants' appellate brief:

---

[3] On the issue of causation, defendants contend that there was no evidence establishing that Carter would have been successful in the Mexican lower court even absent the 15-day statute of limitations contained in the Settlement Agreement, considering that the Mexican lower court found in Arimex Mexico's favor merely because service was not proper. This argument ignores the fact that the Termination Agreement indisputably waived any commission claim by Kimple and Ogden; therefore, absent execution of the Settlement Agreement and Fuller's accompanying deceptions, Arimex Mexico could certainly have succeeded on the merits in the Mexican litigation. Moreover, we fail to see the relevance with respect to why the Mexican lower court found in favor of Arimex Mexico; the bottom line is that the court had restored the property to Arimex Mexico, which ruling was later reversed on a ground that was of Fuller's making.

Although anyone reading this account would have to be left shaking his or her head in disbelief at the foolishness or lawlessness of just about everyone that had any dealings with the Property, nothing that Fuller did was out of keeping with the course of dealings, or pattern of conduct that Carter had already established between the two of them.

This is nearly a concession on defendants' part that Fuller engaged in wrongdoing in response to or retaliation of Carter's alleged wrongdoing; nothing precluded Fuller or Affordable Land from suing plaintiff or Carter for wrongdoing, but an action has apparently never been pursued.

For their next claim of error, defendants contend that because all of Fuller's actions were on behalf of Arimex Mexico, plaintiff cannot sustain a claim based on violations of the Arimex America Operating Agreement. We first note that because we have affirmed the silent fraud cause of action, which in itself would support the conditional consent award of $2.5 million in money damages, this issue is, for the most part, effectively moot. However, we shall entertain the argument.

In count I of its complaint, plaintiff alleged that defendants engaged in illegal, fraudulent, and willfully unfair and oppressive conduct toward Arimex America and its member, plaintiff DC Mex. Plaintiff relied on the Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, and specifically, MCL 450.4515(1), which permits a member of a limited liability company to bring an action in circuit court to establish that acts of the managers or members were "illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member." In Count II of plaintiff's complaint, it alleged that defendant Fuller violated Articles 7.1, 7.2, and 7.5 of the Operating Agreement applicable to the Arimex America joint venture. Article 7.2(b) specifically precludes a manager from taking "any action that would make it impossible to carry out the purposes of the Company." Further, the Arimex America Operating Agreement precluded a manager from selling, exchanging, leasing, or transferring all or substantially all of the assets of the company without calling a meeting of the members. Defendants assert that these claims must fail as a matter of law because every action Fuller took was on behalf of Arimex Mexico. Defendants also argue that claims based on the Arimex America Operating Agreement are legally unsupportable because Arimex America never had an ownership interest in the Cabo property. Defendants reason that because Fuller was acting solely on behalf of Arimex Mexico, his conduct could not also constitute a violation of the Arimex America Operating Agreement. We disagree.

We note at the onset that this argument is being raised for the first time on appeal and, further, defendants have not provided any legal authority for their position. "This Court will not search for authority to sustain or reject a party's position. The failure to cite sufficient authority results in the abandonment of an issue on appeal." *Hughes v Almena Twp,* 284 Mich App 50, 71-72; 771 NW2d 453 (2009) (citation omitted). In any event, defendants have not established the factual predicate for their argument. Defendants have not established that Fuller's actions were solely on behalf of Arimex Mexico, and not on behalf of Arimex America.

The following facts are undisputed. Arimex America was formed as a joint venture between Fuller's limited liability company, Affordable Land, and Carter's limited liability

company, DC Mex. Fuller was named the manager of Arimex America. The purpose of the joint venture, i.e., Arimex America, was to purchase and develop specific property located in Cabo San Lucas, Mexico. As part of the joint venture, Carter and Fuller formed Arimex Mexico, a Mexican Company. It is also undisputed that Arimex America held the majority ownership interest in Arimex Mexico. Based on these facts, it is clear that every action Fuller took was taken on behalf of both Arimex America and Arimex Mexico, as Arimex Mexico was only formed to facilitate the objectives of the Arimex America joint venture. Thus, we conclude that defendants' argument is without merit and unsupported by the factual record.

Finally, defendants argue that, in addition to erring in granting plaintiff's motion for partial summary disposition, the trial court erred in not granting summary disposition in their favor. Pursuant to MCR 2.116(I)(2), summary disposition is properly granted to the opposing party if it appears to the court that the nonmoving party, rather than the moving party, is entitled to judgment. Because we affirm the trial court's grant of partial summary disposition in favor of plaintiff on the question of liability, we also affirm the trial court's denial of defendants' motion for summary disposition.[4]

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

---

[4] At the end of their brief, defendants make a cursory, two-sentence argument that Fuller was authorized by a 2007 power of attorney to take unilateral actions, as reflected in the minutes of a shareholders' meeting, and therefore "none of plaintiff's claims should be upheld." This argument is insufficiently briefed and thus abandoned. *Yee,* 251 Mich App at 406. Further, any assumed authority to take unilateral actions on behalf of a company certainly had a fiduciary aspect to it and clearly did not authorize the perpetration of fraud and acts of self-dealing.