## HUNTER *v.* SLATER.

1. EASEMENTS—DEEDS—AUTHORITY TO BUILD ROAD.
   Plaintiffs were entitled to a permanent license to cross land
   presently owned by defendants, where plaintiffs had sought
   and received written authorization from predecessor owner
   of the land to build a road across north 60 feet of the 40 acres
   so as to reach a public road on the other side thereof and
   had expended $1,000 in building the road before defendants'
   acquisition of the title under deed without any exceptions
   or reservations.

2. EQUITY—STATUTE OF FRAUDS.
   Equity looks at the whole situation and grants or withholds
   relief as good conscience dictates, when the statute of frauds
   is interposed in opposition to asserted rights (CL 1948, § 566.-
   106).

3. FRAUDS, STATUTE OF—OPERATION.
   The statute of frauds exists in the law for the purpose of pre-
   venting fraud or the opportunity for fraud, not as an in-
   strumentality to be used in aid of fraud or as a stumbling
   block in the path of justice (CL 1948, § 566.106).

4. INJUNCTION—DAMAGES—DYNAMITING OF ROAD.
   Award of $200 to cover cost of repairing road which had been
   dynamited by a defendant is affirmed in suit to enjoin inter-
   ference with right-of-way across their land.

* Continued from Volume 330.

REFERENCES FOR POINTS IN HEADNOTES
[1] 33 Am Jur, Licenses §§ 91, 92, 103; 49 Am Jur, Statute of
Frauds § 489.
[2] 49 Am Jur, Statute of Frauds § 579.
[3] 49 Am Jur, Statute of Frauds § 578.

Appeal from Luce; Runnels (Herbert W.), J. Submitted June 5, 1951. (Docket No. 7, Calendar No. 44,937.) Decided September 5, 1951.

Bill by Robert Hunter and another against Kenneth R. Slater and others for injunction restraining interference with roadway and damages. Decree for plaintiffs. Defendants appeal. Affirmed.

*Thos. S. Worsham* (*W. Ralph Delaney,* of counsel), for plaintiffs.

*Estes & Cooney* (*Adams & Fenlon,* of counsel), for defendants.

BOYLES, J. At the time this suit was started plaintiffs owned lot 1, in the northwest quarter of the northeast quarter, and the defendants Cooney and wife owned the northeast quarter of the northeast quarter, of section 25 in McMillan township, Luce county. The only public road near these properties is on the east section line of said township, and the plaintiffs, for access to their property, had been using said county road and a road across the land owned by the defendants. Plaintiffs' lot 1 lies between defendants' northeast quarter of the northeast quarter of said section (on the east) and the Tahquamenon river on the west. In 1943 the William Bonifas Lumber Company had acquired said northeast quarter of the northeast quarter of said section, and in 1947 Hunter, one of the plaintiffs, wrote the lumber company asking if the lumber company would sell said quarter section. Upon the refusal of the lumber company to sell, Hunter again wrote the lumber company asking if it would sell a 60-foot strip across its land so that plaintiffs might have a road from the county road to their land and the Tahquamenon river. After some further correspondence plaintiff Hunter received a letter from

one William J. Brown, acting with the authority of the lumber company, as follows:

"When I wrote to you on November 11th it was expected that I would be able to get away from here to call on you before this time. Circumstances have been such that I have not been able to schedule a trip over there as soon as I have planned. I am sorry if this has caused you any inconvenience in your road building plans that you wrote about.

"From the standpoint of this company, there will be no objection to you building a road across the NE NE of section 25, 47–8 in order to reach your property. You can proceed with your road building plans, and whenever it is convenient for us to get into the territory we will get in touch with you then to complete any arrangements that may be necessary. Meanwhile, do not hold up your operations on this account but go ahead with your plans as you have stated."

Thereupon the plaintiffs built a road across the north side of the lumber company's land at an expense of about $1,000 and used it during the summer seasons of 1948 and 1949 for access from the county road to their property and their dock on the river. On June 13, 1949, the lumber company sold and deeded its said 40 acres to the defendants Cooney and wife, without any exceptions or reservations. On the same date, defendant Slater, the secretary-treasurer of another boat company competing with plaintiffs' boat service on the Tahquamenon river, dynamited plaintiffs' road across said quarter section, but without the knowledge or authority of the then owners, defendants Cooney and wife. The instant suit followed, plaintiffs seeking to enjoin the defendants from further interfering with plaintiffs' use of said road. A temporary restraining order issued to that effect, and pending outcome of the

litigation, plaintiffs have repaired and reopened the road.

The controlling question here is whether plaintiffs have a right to use the road or right-of-way across the quarter section owned by defendants Cooney and wife. The circuit judge, deciding the case on the pleadings and exhibits and an agreed statement of facts, concluded that the correspondence between plaintiff Hunter and the lumber company constituted a contract, and was sufficient to give the plaintiffs an easement and the equitable right to use the road they had constructed on the lumber company property. A decree was entered granting plaintiffs a permanent injunction restraining the defendants from interfering with such use. The defendants appeal.

We agree with the trial court that the equities are entirely on the side of the plaintiffs. The correspondence between plaintiff Hunter and the lumber company starts with an offer by Hunter in 1947 to purchase the quarter section over which plaintiffs later built the road. Upon the lumber company's refusal, Hunter again wrote the company asking if it would sell a 60-foot strip across the north side of said land so that plaintiffs would have a road to their property from the county road. The correspondence indicates some delay, for consultation with the company's officials regarding the "right-of-way." Hunter again wrote the company:

"I can under stand your resion for and easement in preference to a perment sale of the land and I think the essement will be sastafarcty of corse it would hafto perected us a geance canselation of our rightway in case of a trasfair of title of the land some time wee would not luse our rigtway for it is going to cost some money to make this road soo anny thing you can work out along those lines will be all right with us I think you know about what wee hafto have and wee ar willing to pay for it."

There was some further delay, waiting for a representative of the company to call upon plaintiff Hunter, and about 3 months later Hunter again wrote the company:

"On Nov. 11th 1947 you wrote me that you expected to be in Newberry around about the first of this month and would call on me in regards to a road rightway a cross the NE 1/4 of th NE 1/4 of section 25 T 47 R 8 W Wee would like to know as soon as possible how wee stand on this matter as wee would like to bulldose the grade up this winter to give it chace to dry out."

Thereupon, as hereinbefore stated, the agent for the company again wrote plaintiff Hunter, concluding as follows:

"From the standpoint of this company, there will be no objection to you building a road across the NE NE of section 25, 47–8 in order to reach your property. You can proceed with your road building plans, and whenever it is convenient for us to get into the territory we will get in touch with you then to complete any arrangements that may be necessary."

When defendants Cooney and wife acquired the northeast quarter of the northeast quarter of said section from the lumber company on June 13, 1949, they were fully aware of the rights claimed by plaintiffs to use the road across said quarter section. The road was there, and all of the defendants had full knowledge of it. The correspondence between the lumber company and Hunter frequently referred to an easement, road right-of-way, our right-of-way. Plaintiffs had expended approximately $1,000 to construct the road. They claim an easement based upon the correspondence from the admittedly authorized representative of the lumber company, and further claim that in any event they have a license

to use the road, enforceable in equity. In that connection, plaintiffs insist on the right to rely on the written promise of the lumber company, to "complete any arrangements that may be necessary" to give the plaintiffs a road across the lumber company's quarter section.

We are in accord with the conclusion of the trial judge that plaintiffs have in equity a right-of-way across said quarter section. The trial judge concluded that the intent of the parties as shown by the correspondence was that the plaintiffs were to have an easement. We find from the written exhibits that the lumber company intended to give plaintiffs a permanent license to cross its land, concluding a contract to that effect, in the lumber company's promise in writing, that "whenever it is convenient for us to get into the territory we will get in touch with you then to complete any arrangements that may be necessary." The right promised to plaintiffs for a right-of-way across the lumber company's quarter section was not a mere naked license, revocable at will by the lumber company, or one to be revoked by the sale of the land. *Stevens* v. *City of Muskegon,* 111 Mich 72 (36 LRA 777); *Greenwood* v. *School District No. 4 of Napoleon Township,* 126 Mich 81.

The factual situation in *Nowlin Lumber Co.* v. *Wilson,* 119 Mich 406, relied upon by appellants, differs materially from the case at bar. In the *Nowlin Case,* the correspondence merely indicated a request "to build a logging road" across the defendant's land. As to crossing the land, the owner's agent wrote:

"I wrote to Spencer, of Flint, about your crossing his lands, and he says it's all right, go ahead, and you may have time to take your lumber off. Mr. Spencer will expect the same privilege to cross your lands to cut his timber."

There was no mention of a purchase of land, an easement, or a right-of-way, in the *Nowlin Case,* as in the case at bar.

Appellants further rely on a claim that as a matter of law, the statute of frauds* bars plaintiffs' claim.

"Equity looks at the whole situation and grants or withholds relief as good conscience dictates." *Thill* v. *Danna,* 240 Mich 595.

"We are mindful of the fact that this is a case in equity. The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud, not as an instrumentality to be used in aid of fraud or as a stumbling block in the path of justice. While no fraud is alleged or proven in this case, an attempt is made to rely upon the statute and thereby to defeat the undisputed intent of these parties, and this in a chancery court." *Cramer* v. *Ballard,* 315 Mich 496.

The award of $200 to plaintiffs by the decree, to cover the expense of rebuilding the road after it had been dynamited by the defendant Slater, is not questioned. Decree affirmed, with costs.

REID, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.

---

* CL 1948, § 566.106 (Stat Ann § 26.906).—REPORTER.