McFERREN v B & B INVESTMENT GROUP

Docket No. 230289. Submitted September 5, 2002, at Detroit. Decided October 22, 2002, at 9:15 A.M. Leave to appeal sought.

Charles McFerren brought an action in the Oakland Circuit Court against B & B Investment Group, seeking to quiet title to a condominium for which the plaintiff held an unrecorded warranty deed from Wayne and Sandra Miller and the defendant held a later and recorded quitclaim deed from the Millers. The court, Charles W. Simon, Jr., J., dismissed the action, ruling that the plaintiff had unclean hands and therefore was not entitled to the equitable relief sought in his action. The plaintiff appealed.

The Court of Appeals *held*:

A suit to quiet title or remove a cloud on a title is one in equity. A party seeking the aid of equity must come in with clean hands. In this case, the trial court did not err in determining that the "clean hands" doctrine barred the plaintiff's action to quiet title. The record supports the court's determination that the plaintiff attempted to conceal assets, including the condominium, from the federal government and his wife and committed a fraud on the court in his divorce by failing to record his deed to the condominium and representing to others that he merely leased it. Because of this fraud, the defendant did not find anything in the chain of title except a lien in favor of the Drug Enforcement Administration before the defendant acquired the property from the Millers. Therefore, it was the plaintiff's misconduct that caused the cloud on his title.

Affirmed.

EQUITY — ACTIONS TO QUIET TITLE TO REALTY — CLEAN HANDS.

An action seeking to quiet title to realty is an action in equity to which the "clean hands" doctrine applies.

*Alan C. Applebaum* for the plaintiff.

*Sills, Law, Essad, Fiedler & Charboneau, P.C.* (by *Ernest J. Essad, Jr.* and *Susan R. Czapski*), for the defendant.

Before: METER, P.J., and SAAD and R.B. BURNS*, JJ.

PER CURIAM. Plaintiff appeals as of right from a judgment dismissing his complaint to quiet title. We affirm.

In a prior appeal, this Court remanded this case for further proceedings after concluding that an arbitrator was without jurisdiction to decide the parties' quiet-title claims. *McFerren v B & B Investment Group*, 233 Mich App 505; 592 NW2d 782 (1999). The factual background of this case is set forth in this Court's prior opinion as follows:

> This case arises from a dispute over the ownership of real property located at 5256 Potomac Run East, in West Bloomfield, Michigan. Plaintiff purchased the property on January 10, 1986, from Wayne and Sandra Miller for $92,500. The Millers executed a warranty deed to plaintiff, but plaintiff never recorded the deed. Plaintiff paid the purchase price with a series of checks that were each less than $10,000. However, he failed to pay the real estate taxes or the condominium association fees due on the property.
>
> In the summer of 1990, defendant bought the property at a tax sale from the Oakland County Treasurer and received a tax deed. Later that summer, defendant sought and received a quitclaim deed from the Millers in exchange for $25,000. Defendant recorded its quitclaim deed on August 31, 1990. Plaintiff later recorded an affidavit in the record title to the property referring to the 1986 deed conveying the property to him.
>
> Plaintiff filed a complaint against defendant on May 3, 1991, alleging that defendant was not a bona fide purchaser without notice; therefore, defendant's quitclaim deed should be quashed and title should be quieted in plaintiff's favor. The parties later stipulated to submit the case to arbitration

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

in 1992, and the trial court entered an order referring the case to arbitration. However, the appointed arbitrator died before arbitration and neither party pursued the case while another action involving the parties proceeded through the trial and appellate stage.

In December 1996, the trial court granted defendant's motion to reopen the case. Defendant filed a counterclaim and a cross-claim to quiet title on January 13, 1997. On February 3, 1997, the trial court entered an order appointing a new arbitrator and submitting the matter to arbitration, which order was signed by both parties. After a hearing, the arbitrator issued his opinion and judgment ordering the sale of the property and an equitable division of the proceeds. The arbitrator relied on equitable principles and noted that plaintiff did not have "clean hands" because he did not record the deed in an apparent attempt to prevent his wife and the United States government from discovering he owned the property. The arbitrator ordered that defendant receive the first $83,000 from the net proceeds of the sale of the property, that the next $30,000 plus interest be distributed to plaintiff's attorney, who had a valid mortgage on the property for legal services rendered to plaintiff, and that the balance of the proceeds be distributed to plaintiff.

After the arbitrator filed his opinion and judgment, plaintiff moved in the trial court to set aside the opinion and judgment on two grounds. First, plaintiff argued although the parties had agreed to arbitrate the dispute, arbitration was precluded by MCL 600.5005, which prohibits submitting any issue involving fee ownership of real estate to arbitration. In the alternative, plaintiff argued the arbitrator exceeded his authority when instead of determining whether plaintiff or defendant owned the property, he ordered the property sold and the proceeds of the sale divided.

The trial court denied plaintiff's motion to set aside the arbitrator's opinion and judgment, recognizing the state's strong policy favoring arbitration and relying on the fact that plaintiff stipulated and actively participated in arbitration. The trial court held plaintiff could not wait until he knew the outcome of the arbitration to object. The trial

court also held MCL 600.5005 did not apply because the arbitrator did not determine the fee interests of the parties, but instead ordered the property sold and the proceeds of the sale divided. Moreover, the trial court rejected plaintiff's claim that the arbitrator exceeded his authority by fashioning an equitable remedy different than what the parties had requested.

After the trial court denied plaintiff's motion to set aside the arbitrator's opinion and judgment, defendant filed a "Motion for Judgment to Clear Title and for Sale of Property Pursuant to Arbitration Award." The trial court granted defendant's motion and entered a judgment that ordered the property sold and the net proceeds divided pursuant to the arbitrator's opinion and judgment. Plaintiff then filed a postjudgment motion to modify the judgment, which the trial court denied. Plaintiff appealed. [*McFerren, supra* at 506-509.]

Although recognizing "that it may appear inequitable to allow plaintiff to wait until the outcome of the arbitration to raise his challenge to the arbitrator's authority," this Court noted that "a party may challenge the subject-matter jurisdiction of a court at any time." *Id.* at 512. Moreover, "subject-matter jurisdiction cannot be conferred on a court by consent of the parties." *Id.* at 513. This Court determined that the arbitrator "was without jurisdiction to decide the dispute presented to him," vacated the judgment of the trial court, and "[r]eversed and remanded for further proceedings not inconsistent with this opinion." *Id.* at 511, 513.

On remand, following a bench trial, the trial court found that plaintiff purchased the subject property on January 10, 1986, from Wayne and Sandra Miller, but did not record the deed. On May 2, 1989, defendant B & B Investments purchased the property at a tax sale of the 1986 taxes for approximately $2,240.81,

thereby becoming the owners, subject to a six-month right of redemption. Because of a government lien on the property, defendants subsequently sent both Linda Burgess, who occupied the property, and plaintiff a notice of redemption. Title searches did not reveal any title in plaintiff, and a tax search revealed that the taxes were still being billed to the Millers. The condominium association fees remained in the Millers' names. Thereafter, defendant received a quitclaim deed from the Millers in exchange for $9,900 so that it would not have to wait the six-month redemption period. Approximately two weeks before the transfer by the Millers to defendant, a Drug Enforcement Administration (DEA) lien was discharged. Plaintiff brought this suit to quiet title to his interest in the property now claimed by defendant.

The trial court observed that an action to quiet title was equitable in nature and that all equitable doctrines, including the clean hands doctrine, applied. Plaintiff had answered interrogatories in his divorce case and stated under oath that he rented the property and did not own it. He also sold his interest to Linda Burgess under a land contract when he knew that he had not perfected his ownership in the property by recording a deed. Plaintiff did not pay any taxes on the property and did not have the county treasurer send the tax bills to him. Nor did he pay his condominium association assessments. In the deed that he received from the Millers, plaintiff indicated that he was a single man when in fact he was still married, albeit separated. Plaintiff also allowed an affidavit signed by someone else to be filed with the Register of Deeds. Because plaintiff had unclean hands, the court found that he was not entitled to the

relief he requested and, accordingly, dismissed his suit to quiet title.

On appeal, plaintiff argues that the trial court erred in failing to address whether defendant was a bona fide purchaser for value. Plaintiff contends that because the trial court made no determination whether defendant had knowledge of plaintiff's interest before paying approximately $9,900 to the Millers in return for their execution of a quitclaim deed, this Court should reverse and remand for such a determination. Plaintiff also argues that he did not commit any misconduct against defendant, and that defendant did not rely on any alleged misconduct on his part in securing the deed from the Millers. Therefore, the trial court erred in determining that, pursuant to the clean hands doctrine, he was not entitled to relief.

A suit to quiet title or remove a cloud on a title is one in equity. *McKay v Palmer*, 170 Mich App 288, 293; 427 NW2d 620 (1988). We review equitable actions de novo but review the trial court's factual findings for clear error. *Michigan Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). "A court acting in equity 'looks at the whole situation and grants or withholds relief as good conscience dictates.' " *Id.*, quoting *Hunter v Slater*, 331 Mich 1, 7; 49 NW2d 33 (1951). A party seeking the aid of equity must come in with clean hands. *Rose v Nat'l Auction Group*, 466 Mich 453, 462-463; 646 NW2d 455 (2002). "The clean hands maxim 'is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.' " *Id.*, quoting *Stachnik v Winkel*, 394 Mich 375,

382; 230 NW2d 529 (1975). The clean hands doctrine applies to quiet-title actions. *McKay, supra* at 293.

The trial court did not err in determining that the "clean hands" doctrine barred plaintiff's action to quiet title. The record supports the court's determination that plaintiff attempted to conceal assets from the federal government and his former wife and committed a fraud on the court in his divorce by failing to record his deed to the property and representing to others that he merely leased the property. Because of this fraud, defendant did not find anything in the property records except a DEA lien before it purchased the property from the Millers. Therefore, it was plaintiff's misconduct that caused the cloud on his title.

In determining that plaintiff's misconduct in seeking to conceal his ownership of the property barred his suit, the trial court relied on *Weller v Weller*, 344 Mich 614; 75 NW2d 34 (1956). In that case, the plaintiff and the defendant, former spouses, conspired to conceal from the plaintiff's second wife, and from the court in her divorce case, the fact that the plaintiff had an interest in certain property. *Id.* at 619-620. When the defendant refused to reconvey the property to the plaintiff until he performed some obligations toward her, the plaintiff sued. The trial court ruled that the plaintiff was entitled to a reconveyance subject to payment to the defendant of the sums owed. *Id.* at 618-619. The defendant appealed, arguing, inter alia, that the plaintiff was not entitled to any relief in a court of equity. The Supreme Court agreed. *Id.* at 619. The Supreme Court noted that the plaintiff had committed a fraud on the court in his second divorce. *Id.* at 623. "Under such circumstances, a court of

equity will not lend its aid to the parties to the fraud." *Id.* "They will be left by the Court in the situation in which they have placed themselves." *Id.* The Court set aside the trial court's judgment and dismissed the complaint, without costs to either party. *Id.* The decision in *Weller* supports the trial court's decision in this case.

Plaintiff argues that his acts of wrongdoing were against his wife and the federal government, not defendant, and, therefore, the clean hands doctrine should not bar his claim. "The misconduct which will move a court of equity to deny relief must bear a more or less direct relation to the transaction concerning which complaint is made. Relief is not denied merely because of the general morals, character or conduct of the party seeking relief." *McKeighan v Citizens Commercial & Savings Bank of Flint*, 302 Mich 666, 671; 5 NW2d 524 (1942).

However, the fact that the misconduct was directed at unrelated third parties does not bar application of the clean hands doctrine. For example, in *Rose*, *supra*, the plaintiff and the defendant schemed that the defendant would make a phony bid at an auction so that the plaintiff would obtain a higher price for his property. Thus, the misconduct was directed at unrelated third parties. Application of the clean hands doctrine was still appropriate because the claims made by the plaintiff were inextricably tied to the plaintiff's wrongdoing. *Id.* at 467. Here, plaintiff's attempt to conceal his ownership of the property directly led to the cloud on title that he sought to clear in this action. Therefore, it was proper to apply the doctrine in this case.

Affirmed.