SUHRHEINRICH, Circuit Judge,
dissenting.
I concur in the majority opinion with the exception of its resolution of the unjust enrichment claim in Section V. I do not agree with the majority’s holding that Schwarz was not unjustly enriched to the detriment of Ferndale because Ferndale continued to receive profits from the sale of Analpram during the period that Block was distributing the cream to Schwarz, and that any inequity to Ferndale resulted exclusively from the fact that Schwarz, not Block, ultimately distributed the product.
The majority fails to mention that Fern-dale possesses a unique asset, a prescription product containing two active ingredients, pramoxine and hyrocortisone acetate in a 1%/1% combination cream, that only Ferndale is authorized to manufacture by the United States Food and Drug Administration (“FDA”). As the district court found, “only Ferndale had the right to manufacture this cream under the ANDA [Abbreviated New Drug Application].” By virtue of the Asset Purchase Agreement and Distribution Agreement[9] for which it paid Block $106 million, Schwarz acquired the right to purchase and market a unique asset that it could not otherwise obtain absent direct negotiations with Ferndale. Thus, at a minimum, Schwarz acquired that right at the price negotiated between Ferndale and Block. In other words, although “Schwarz paid for all of the Anal-pram it ever received,” it paid for it at the price negotiated by Block, thereby depriving Ferndale of the opportunity to negotiate a higher price from Schwarz. Schwarz acknowledges as much in its brief:
Both Block and Schwarz in good faith believed that Ferndale’s consent to the assignment of the Supply Agreement could be obtained because this type of assignment clause is standard in the industry. The clause works to assure an assignee can meet the expectations of the agreement. (R. 140, Troup 2/26/99 Trans, at 56-57, Apx. 880-81) Such clauses are often present to protect the contract manufacturer and allow a break in the contract to permit a price increase. Such clauses also protect the contract manufacturer by not allowing assignment to a company that would significantly reduce sales of the product. (R. 140 Troup, 1/26/99 Trans, at 56, Apx. 880) The parties believed that because Schwarz could meet those expectations, Ferndale would consent ..... 880-82, 890.
(Intervenor Br. at 5).[10]
Moreover, Schwarz deprived Ferndale *654 of Ferndale’s right to consideration for its permission to sell the exclusive pharmaceutical product. Schwarz paid Block to assume the crucial rights of marketing and selling Analpram. In other words, Schwarz received a benefit from Ferndale to which it was not entitled, the right to market and sell the 1%/1% cream. See Barber v. SMH (US), Inc., 202 Mich.App. 366, 509 N.W.2d 791, 796 (1993) (citing Dumas v. Auto Club Ins. Ass’n, 437 Mich. 521, 473 N.W.2d 652, 663 (1991) (stating items elements of unjust enrichment under Michigan law)). The equities do not favor Schwarz either. As the district court found “Schwarz had taken the risk that Ferndale might not consent to the asset sale and then willingly engaged in a Distribution Agreement that Schwarz knew circumvented the assignment provision.” Findings of Fact and Conclusions of Law, p. 42 See Michigan Educ. Employees Mut. Ins. Co. v. Morris, 460 Mich. 180, 596 N.W.2d 142, 151 (1999) (ruling that unjust enrichment is an equitable doctrine that requires a person who has been unjustly enriched at the expense of another to make restitution to the other); see also McFerren v. B & B Inv. Group, 253 Mich. App. 517, 655 N.W.2d 779, 783 (2002) (“A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates.”) (internal quotation marks omitted).
As the district court found, the selling price for the right to market Analpram “was somewhere between $4.5 (Davis) and $9.6 (Rozek) million.” Findings of Fact, p. 42. In determining that Schwarz was unjustly enriched by $2.1 million, the district court calculated that Schwarz earned $6.6 million ($8.5 million minus the selling costs) from July 1995 until Ferndale withdrew the product. The district court then subtracted the selling price of the asset which it set at the lower amount, $4.5 million, apparently giving weight to Schwarz’s argument that it should not be held responsible for the selling price because it lost money. To my mind, the fact that Schwarz lost money on the asset purchase is irrelevant to the calculation of unjust enrichment. Schwarz’s mismanagement of the asset does not undermine the fact that Schwarz deprived Ferndale of the right to negotiate, and receive a price for the sale of its asset, which Schwarz apparently valued at approximately $4.5 million. Thus, I think that in calculating unjust enrichment damages, the district court erred in subtracting the $4.5 million from the $6.6 million. I would therefore award Ferndale $6.6 million in unjust enrichment damages against Schwarz.
For these reasons, I dissent from Section V of the majority opinion.

. The Asset Purchase Agreement reflects that Block agreed to sell nearly all of the Reed & Camick assets to Schwarz, including the Ferndale/Reed & Camick Supply Agreement. In its findings of fact, the district court explicitly found that "[a]s part of the Asset Purchase Agreement, Schwarz acquired the right to market the 1%,1% Protocream, either by assignment of the Supply Agreement or by devising a mechanism whereby Schwarz would effectively have the right to market the Protocream.” Findings of Fact and Conclusions of Law, p. 9.

. The district court held that "Ferndale lost control over who had the right to sell its unique product. Ferndale also lost the ability *654 to negotiate the marketing of its product with another company.” Findings of Fact, p. 24.