# STATE OF MICHIGAN

# COURT OF APPEALS

DURED B. HAJJI,

      Plaintiff-Appellant,

v

GEORGE ESHO,

      Defendant-Appellee.

UNPUBLISHED
March 23, 2017

No. 329737
Oakland Circuit Court
LC No. 2013-134913-CZ

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this case regarding an alleged oral contract for the sale of land, plaintiff, Dured Hajji, appeals as of right from an order granting defendant, George Esho's, motion for summary disposition pursuant to MCR 2.116(C)(10). Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

In 2002, Hajji purchased a lakefront house in White Lake, Michigan. In 2011, the mortgagee, Bank of America (the "Bank") foreclosed on the property. Hajji approached his uncle, Esho, and asked him to purchase the property on his behalf from the Bank and then sell the property back to him for the same price paid to the bank. Hajji testified that Esho verbally agreed to do so. However, because of irregularities in the foreclosure process, the Bank withdrew the property from the market, voided the foreclosure, and restored Hajji to ownership. In 2012, the Bank again foreclosed on the property. Hajji admitted that the redemption price for the property at that time was over $500,000 and that he had no intention of redeeming the property for that amount. Instead, he again contacted Esho about purchasing the property. He testified that Esho agreed to purchase the property on his behalf and that he provided instructions to Esho on how to go about making the purchase. The alleged agreement was never reduced to writing. Further, in contrast to Hajji's assertions, Esho testified that although Hajji had approached him about purchasing the property on his behalf, he never agreed to do so and instead decided to purchase the property for himself. It is undisputed that Esho purchased the property for $130,000 and that he did not convey it to Hajji.

-1-

Thereafter, Hajji filed his complaint in July 2013, alleging breach of fiduciary duty, breach of constructive trust and equitable relief, fraud, unjust enrichment, and specific performance. On March 14, 2014, Hajji filed a motion for partial summary disposition and sought the imposition of a constructive trust. The trial court initially granted the motion, holding that it would be unconscionable for Esho to keep the property because he only learned of it through the suffering of his family member. On reconsideration, however, the trial court vacated the order creating a constructive trust. On June 15, 2015, Esho moved for summary disposition, which the trial court granting on September 8, 2015.[1] The trial court reasoned that although the statute of frauds does not apply to a constructive trust, Hajji was not entitled to a constructive trust because he had unclean hands. Therefore, the court held that Hajji's claims were barred by the statute of frauds because the alleged verbal agreement between the parties was for a conveyance of realty.

This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Hajji argues that the trial court erred in granting summary disposition. We review de novo a trial court's decision on a summary disposition motion. *Spiek v Michigan Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought pursuant to MCR 2.116(C)(10) is properly granted only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (quotation omitted). To determine whether there is a genuine issue of material fact, we review the record in the light most favorable to the nonmoving party, including "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties." *Id*. (quotation omitted). If, after such review, there remains a relevant factual issue on which reasonable people could disagree, the motion must be denied. *Id*. If there is no genuine issue of material fact, the inquiry becomes whether one of the parties is entitled to judgment as a matter of law. *Id*. "We review equitable actions de novo but review the trial court's factual findings for clear error." *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). "A court acting in equity 'looks at the whole situation and grants or withholds relief as good conscience dictates.' " *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992), quoting *Hunter v Slater*, 331 Mich 1, 7; 49 NW2d 33 (1951).

## B. ANALYSIS

The statute of frauds generally requires contracts for the sale of land to be in a writing signed by the seller. *Zurcher v Herveat*, 238 Mich App 267, 277; 605 NW2d 329 (1999), citing

---

[1] Esho argues that Hajji is precluded from relying on anything that was said at this hearing because he failed to order the hearing transcript. Hajji, however, does not rely on the hearing transcript on appeal.

MCL 566.108. Here, Hajji acknowledges that there was only an oral agreement between him and Esho, and that the agreement was for Esho to purchase the property from the Bank and then convey it to him for the same price. Nevertheless, he asserts that the statute of frauds does not bar enforcement of the agreement because the circumstances justify the imposition of a constructive trust in his favor. We disagree.

A constructive trust is an equitable remedy that transforms the title holder into a trustee for another person. *Arndt v Vos*, 83 Mich App 484, 487; 268 NW2d 693 (1978). "A constructive trust may be imposed 'where such trust is necessary to do equity or to prevent unjust enrichment . . . .' " *Kammer Asphalt Paving Co v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993), quoting *Ooley v Collins*, 344 Mich 148, 158; 73 NW2d 464 (1955). The imposition of a constructive trust is appropriate when someone has obtained property "through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property[.]" *Kammer Asphalt*, 443 Mich at 188. The person seeking the imposition of a constructive trust has the burden of proof. *Id*. Moreover, despite the statute of frauds, an oral contract for the sale of land can be enforced if the circumstances justify the imposition of a constructive trust. *Arndt*, 83 Mich App at 487-488.

However, because a constructive trust is an equitable remedy, a party seeking a constructive trust must come in with clean hands. See *Rose v Nat'l Auction Group*, 466 Mich 453, 462-463; 646 NW2d 455 (2002). In other words, regardless of how improper a party's behavior may have been, we cannot grant equitable relief to a party who is "tainted with inequitableness or bad faith relative to the matter." *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975) (quotation omitted). This is because the doctrine of clean hands "is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abettor of iniquity.' " *Id*., quoting *Precision Instrument Mfg Co v Auto Maintenance Machinery Co*, 324 US 806, 814; 65 S Ct 993; 89 L Ed 1381 (1944).

Additionally, courts will not grant equitable relief on a verbal agreement where, as here, the agreement would have been unenforceable if written. A contract that involves an improper subject matter that contradicts public policy is not valid. *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 54; 672 NW2d 884 (2003). A contract entered for the purpose of defrauding a third party contradicts Michigan's public policy. *Weller v Weller*, 344 Mich 614, 622; 75 NW2d 34 (1956). Courts will apply the clean hands doctrine to bar relief to a plaintiff whose misconduct was directed at a third party if the plaintiff's claims are "inextricably tied to the plaintiff's wrongdoing." *McFerren*, 253 Mich App at 524. The conduct need not be illegal. Rather, "any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded [people], will be sufficient to make the hands of the applicant unclean." *Rose*, 466 Mich at 466, quoting 2 Pomeroy's Equity Jurisprudence, § 404, p 143 (1941).

In this case, the agreement Esho signed with the Bank expressly required him to disclose any familial relationship with the previous homeowner, i.e., Hajji. Presumably the purpose of such a clause would be to prevent homeowners from defrauding the bank by having a relative or friend purchase the foreclosed property for a fire sale price through a prearranged and secret

-3-

agreement. Under such circumstances, the banks would not get the benefit of their bargains with mortgagors, and mortgagors would get far more than the benefit of their bargains. Any honest and fair-minded person would see this as decidedly unfair. Although Hajji did not have a contractual obligation to disclose to the Bank his relationship to Esho, the record nevertheless demonstrates that he had unclean hands. In his complaint, he averred that after learning of the property listing he "desired to purchase the Property and, *seeking to remain an undisclosed principal*, sought out [Esho], his uncle, to act as his agent in acquiring the Property by obtaining a deed in his name, and then" transferring the property to him (emphasis added). He also testified at his deposition that the redemption value for the property was over $500,000, but that he had no intention of seeking to redeem the property. Further, although there is evidence that he told the real estate agent representing the Bank that he intended to have his uncle purchase the property on his behalf, the real estate agent averred that she was unaware that Esho was actually Hajji's uncle. Therefore, it is plain that Hajji was secretly trying to regain title to the property for significantly less than what he owed the bank and that he was trying to use subterfuge to do so. Moreover, as the party seeking the constructive trust, Hajji's argument that Esho's hands are unclean because Esho did not disclose their relationship is unavailing. See *City of Fraser v Almeda Univ*, 314 Mich App 79, 100; 886 NW2d 730 (2016) (indicating that a party may not avoid the application of the clean hands doctrine by arguing that the other party also has unclean hands). Accordingly, under the facts before this Court, Hajji has unclean hands and is not entitled to equitable relief.[2]

The trial court did not err in granting summary disposition to Esho because a constructive trust was not warranted under the circumstances and because the alleged verbal agreement to convey real estate was barred by the statute of frauds.

Affirmed. Esho, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[2] Hajji correctly points out that the trial court's stated reasons for vacating the constructive trust were invalid. The court vacated the constructive trust because it concluded that such equitable relief would force Esho to breach his contract with the Bank. The duty Esho had, however, was merely to disclose to the Bank his relationship with Hajji, and that duty no longer existed after the closing. However, the trial court later provided the correct reasoning in the order granting summary disposition. In any case, we will not reverse a lower court when it reaches the correct result, even if it has done so for the wrong reason. See *Dybata v Wayne Co*, 287 Mich App 635, 647; 791 NW2d 499 (2010).