*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINE RODDY, also known as CHRISTINE SPICKO,

Plaintiff/Counterdefendant-Appellee,

v

ANA CARCAMO,

Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
June 16, 2026
10:25 AM

No. 374164
Oakland Circuit Court
LC No. 2023-200539-CH

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant/counterplaintiff, Ana Carcamo, appeals as of right the trial court's order quieting title in favor of plaintiff/counterdefendant, Christine Roddy, of certain disputed property along the parties' joint property line. We affirm.

## I. FACTS

This case arises out of a dispute between the parties regarding the location of the property line that separates their adjoining properties in Auburn Hills. Plaintiff lives at 599 South Grey Road, and defendant lives at 591 South Grey Road. Defendant's property adjoins the west side of plaintiff's property. The property line in question is approximately 225 feet long. A portion of the disputed property line is marked by plaintiff's wooden privacy fence. In addition to the wooden privacy fence, wire fencing extends from the north property line at the rear of the property south toward the privacy fence. The parties appear to agree that the location of the northern portion of the boundary line marked by the wire fence is accurate within a few inches. The wooden privacy fence, located south of the wire fence, is approximately 50 feet in length. From the south end of the privacy fence to the road is approximately 70 feet; this area is unfenced yard and garden. Defendant contends that plaintiff's privacy fence encroaches upon defendant's property by approximately four feet, and similarly, that plaintiff's use of the property south of the privacy fence to the road encroaches on defendant's property by approximately four feet.

Plaintiff and her previous husband[1] purchased the home at 599 South Grey Road in April 1983. At that time, a survey of the property was conducted by Harry H. Kemnitz; the survey located the property line with 591 South Grey Road at 25 feet west of plaintiff's house. In June 1989, plaintiff obtained another survey of the property by Harry H. Kemnitz, which again indicated the same property line as the 1983 survey. At trial, plaintiff presented testimony and photographs supporting her claim that since 1983 and continuing to the present day, she consistently has used the now-disputed four-foot wide area delineated by the privacy fence, as well as the unfenced area south of the fence to the road, as part of her property, occasionally parking cars and holding yard sales in that area. She also has maintained the lawn and planted shrubs and garden plants in the disputed area.

Plaintiff testified that in 1991, she and her husband created a gravel driveway to the west of her house and that same year built a new garage by the gravel driveway. Plaintiff testified that in 2004 she installed the wooden privacy fence on what she believed to be the property line with 591 South Grey Road. Plaintiff introduced a photograph depicting the privacy fence and testified that the photograph was taken in 2004. Plaintiff testified that since purchasing the house in 1983, she believed the property line to be as represented in the Kremnitz surveys and therefore installed the privacy fence within 25 feet from the west side of her house in reliance on the Kemnitz surveys. Plaintiff also testified that in April 2008 she had a tree removed from the area near the privacy fence now in dispute; plaintiff introduced a photograph of the tree removal at trial. In 2013, plaintiff had the driveway paved.

In August 2008, Maura Ponce, together with her daughter-in-law, Priscilla Carcamo, purchased the house at 591 South Grey Road. She testified that when she moved into the home, there was no privacy fence dividing the property from plaintiff's property and that plaintiff and plaintiff's husband built the privacy fence one year later in 2009.

Joshua Carcamo, defendant's nephew, testified that in 2008-2009, when he was 9 years old, he lived at 591 South Grey Road with his grandmother, Maura Ponce. He testified that he recognized plaintiff's privacy fence as that shown in an exhibit photograph and that the privacy fence was erected within two months after he moved to 591 South Grey Road in 2008. He also explained that before testifying he looked at historical aerial photographs of the property on the internet to determine the date that the privacy fence was installed.

In 2019, Ponce's son, Louis Carcamo, and his wife, defendant Ana Carcamo, moved into Ponce's home at 591 South Grey Road. Defendant testified that she began living at 591 South Grey Road in 2019, but visited the property beginning in 2009. Defendant estimated that plaintiff installed the wooden privacy fence in 2010. In approximately 2022, Ponce transferred 591 South Grey Road to defendant.

In February 2023, the Carcamos, who were building an addition on the house at 591 South Grey Road, hired a survey of their property by George Reichert. The survey indicated that the property line between the parties' properties was located approximately four feet east of plaintiff's

---

[1] In 1997, plaintiff and her then-husband divorced, and he quitclaimed 599 South Grey Road to plaintiff. Plaintiff has since remarried.

privacy fence; in other words, the new survey indicated that plaintiff's privacy fence and portions of her driveway encroached over the surveyed property line by approximately four feet. After some discussion regarding the location of the property line, the situation between the parties became hostile. Defendant's husband then installed fence posts and began to install chain link fencing in the disputed area, thereby marking a new property line between plaintiff's house and plaintiff's privacy fence, which would, when completed, essentially bisect plaintiff's driveway.

On May 25, 2023, plaintiff filed a complaint seeking to quiet title to the disputed area. Plaintiff claimed ownership of the disputed area by virtue of her deed to the property and, alternatively, by adverse possession and by acquiescence. Plaintiff asserted that since purchasing her home in 1983, she continuously and visibly occupied the now-disputed area to the exclusion of others and that no person had asserted a claim to the disputed area until defendant did so in early 2023. Defendant filed a counterclaim against plaintiff asserting ownership of the disputed area, alleging trespass by plaintiff, and seeking to quiet title to the disputed area in defendant's favor.

After a bench trial, the trial court issued its opinion and order determining that plaintiff had established ownership of the disputed property under the doctrines of acquiescence and adverse possession, while defendant's counterclaim alleging trespass and for quiet title failed. The trial court found that the aerial photographs showed a fence existing in the area of the privacy fence as early as 2004, but that later photographs showed a larger fence of different construction in that location. The trial court held, however, that regardless of when the privacy fence was installed, other unrefuted evidence presented by plaintiff demonstrated that plaintiff had possessed the disputed area unchallenged for more than 15 years.

The trial court ordered that the parties jointly hire a new survey to establish a new legal description of the properties, that the property line dividing the properties from the northeast end of plaintiff's property to the privacy fence should follow the 2023 George Reichert survey, that from that point the property line should be drawn to include plaintiff's privacy fence on plaintiff's property, and that the property line also should be drawn to run from the south end of plaintiff's privacy fence to the road at an angle to meet the actual property line. Defendant now appeals.

## II. DISCUSSION

Defendant challenges the trial court's order asserting that the trial court erred by finding that plaintiff installed the wooden privacy fence in two stages. Defendant also asserts that the trial court erred by establishing the property line north of the privacy fence to the northern property line consistent with the wire fence and south of the privacy fence at an angle to meet the original property line at the road. We disagree that the trial court erred.

We review de novo the trial court's decision in an action to quiet title. *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 467; 966 NW2d 729 (2021). We review for clear error the trial court's findings of fact at a bench trial and review the trial court's conclusions of law de novo. *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023).

An action to quiet title may be brought under MCL 600.2932(1). *Werme*, 335 Mich App at 469. That statute provides:

Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim an interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. [MCL 600.2932(1).]

In an action seeking to quiet title, the plaintiff has the burden to establish a prima facie case of title. *Werme*, 335 Mich App at 470. The defendant then has the burden to prove that he or she has superior right or title in the property. *Id*. After considering the evidence, the trial court must determine which party holds title to the disputed property. MCR 3.411(D)(1). Ordinarily, an action for the recovery or possession of land must be brought within 15 years of the accrual of the claim. MCL 600.5801(4); *Houston v Mint Group, LLC*, 335 Mich App 545, 567-568; 968 NW2d 9 (2021).

In this case, plaintiff sought a declaration quieting title to the disputed property in her favor under theories of adverse possession and acquiescence. To establish ownership by adverse possession, the plaintiff must demonstrate "clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlett Auto Wash, LLC v Van Dyke SC Props*, LLC, 501 Mich 192, 202; 912 NW2d 161 (2018).

A plaintiff may also establish title to property under the theory that the parties acquiesced to a property boundary line. *Houston*, 335 Mich App at 567. Acquiescence is established when a preponderance of the evidence demonstrates that the parties treated a particular boundary line as the true property line. *Id*. There are three theories of acquiescence, namely (1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary. *Id*. at 568. A claim of acquiescence requires the plaintiff to demonstrate that the property owners treated a boundary line or marker as the property line for 15 years. *Id*. To establish the period of fifteen years, the acquiescence of title can be tacked, that is, the current owner's acquiescence may be tacked to that of previous owners; proof of privity of title holders is not required. *Id*. In addition, unlike adverse possession, the plaintiff claiming ownership by acquiescence is not required to demonstrate that the possession of the land was hostile or without permission. *Id*. This Court has explained that

[t]he law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land. [*Sackett v Atyeo*, 217 Mich App 676, 681-682; 552 NW2d 536 (1996) (quotation marks and citation omitted).]

The reason underlying the rule of acquiescence is the promotion of the peaceful resolution of boundary disputes. *Houston*, 335 Mich App at 568. Therefore, "a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys." *Id*., citing *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956).

In this case, at trial plaintiff presented testimony and photographs demonstrating that since 1983, she used the now-disputed four-foot wide area delineated by the privacy fence, as well as the unfenced area south of the privacy fence to the road, as part of her property, maintaining the lawn and occasionally parking cars and holding yard sales in that area. She introduced proof of a land survey indicating that her property line was 25 feet west of her house and testified that she adhered to that property line because she believed it was accurate. Plaintiff testified that in 2004 she installed the wooden privacy fence separating her property from 591 South Grey Road and introduced a photograph that she testified was taken in 2004 depicting the privacy fence. Plaintiff also testified that in April 2008 she had a tree removed from the area near the privacy fence now in dispute; plaintiff introduced a photograph of the tree removal at trial. Plaintiff testified that from 1983 until early 2023 when defendant asserted ownership of the disputed area, no one challenged her ownership of the disputed area, and everyone had adhered to the boundary line established 25 feet west of her house.

At trial, defendant presented testimony that her mother-in-law, Maura Ponce, bought 591 South Grey Road in 2008. Defendant testified that she first saw Ponce's house in 2009, and that she recalled that the privacy fence was constructed in 2010. Defendant also introduced historical ariel photographs that she asserted demonstrated that the privacy fence was not constructed until after 2008. Defendant presented no evidence refuting plaintiff's claim that at the time Ponce purchased 591 South Grey Road in 2008, plaintiff had adhered to the line 25 feet west of her house since 1983 and that no prior owner of 591 South Grey Road had disputed that boundary.

The trial court found that, based on the aerial photographs, plaintiff installed an early version of the privacy fence as early as 2004 and increased that fence in 2008. The trial court concluded, however, that regardless of when the privacy fence was installed, the unrefuted evidence demonstrated that plaintiff exercised exclusive control and possession of the disputed area for at least 15 years. The trial court stated:

> The fence is not the only basis upon which Plaintiff lays her claims. Exhibits 15a and b show Roddy's use of the disputed property as if it was hers; parking cars, holding yard sales, maintaining the lawn and installing a driveway. Virtually every aerial photograph shows cars and other vehicles parked on the disputed property. The aerial photographs also show the paved driveway which lies on the disputed property being in existence as far back as 2005. A mature tree was removed by the Roddys from the disputed property on April 27, 2008.

> There was no evidence presented by either party, that before the Carcamos' attempt to install the chain-link fence in 2023, that Carcamo or her predecessors in title had ever used the disputed property for any purpose, or maintained it in any manner. The property in question was exclusively used by Roddy.

* * *

Based on the evidence presented, the court finds [that] the parties treated the location of the original privacy fence and the area used and maintained by Roddy as the true location of the boundary for the relevant period of time and, therefore acquiesced to the location of the boundary.

We agree that plaintiff acquired the disputed area by acquiescence. The evidence supports a finding that when Ponce purchased 591 South Grey Road in 2008, plaintiff already had acquired the disputed area by acquiescence by virtue of her unchallenged possession of the disputed area since 1983. The evidence also supports a finding that even after Ponce purchased 591 South Grey Road in 2008, plaintiff continued to possess and exercise dominion over the disputed area and neither Ponce nor any other person challenged the boundary line or plaintiff's occupation of the disputed area until early 2023.

In other words, regardless of whether the privacy fence was built in 2004 or sometime thereafter, plaintiff presented evidence to support a finding that in 1998, she acquired the disputed area by acquiescence having exclusively possessed the disputed area since 1983 without challenge. See *Houston*, 335 Mich App at 568 (Where the property owners treated a boundary line as the property line for 15 years, the claimant acquired the disputed area by acquiescence, which may occur by tacking the current owner's acquiescence to that of previous owners regardless of privity of title holders). We further conclude, as did the trial court, that the same evidence that supports the determination that plaintiff acquired title to the disputed area by acquiescence also supports a determination that plaintiff acquired title to the disputed area by adverse possession. Plaintiff presented evidence that her possession of the disputed area was actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period. See *Marlett Auto Wash, LLC*, 501 Mich at 202.

On appeal, defendant argues that the trial court erred by inferring from the aerial photos introduced at trial that plaintiff erected the privacy fence in 2004 and expanded it in 2008 or 2009. In its opinion, the trial court discussed the aerial photos at length and stated in relevant part:

> Aerial photographs taken at the direction of Oakland County for use on its Gateway aerial photography system were introduced, showing aerial views of the property taken in 2005, 2006, 2008, 2010, 2012 and 2014. The photograph taken in 2008 was taken some time between April 26, and May 19, 2008.

> The photograph taken in 2010 shows what appears to be the fence structure in place in its current location. While the quality of the aerial photos [is] not good, a close look reveals that in the 2006 photo, there are two trees to the left of the Roddy's driveway in the disputed area. In the 2008 photo, the tree closest to the garage is missing. This would correspond with Mrs. Roddy's testimony that the tree was removed on April 27, 2008.

> Because the records of Oakland County do not contain the exact date upon which the 2008 aerial photo was taken, it can only be determined that its contents depict the status of the property sometime between April 26 and May 8, 2008.

The photo that was introduced as Exhibit 13b, which depicts the tree being removed, clearly shows the existence of a fence to the right of the image. The fence appears to run from the garage toward the road on the west of the Roddy[s'] driveway but does not run the entire length of the fence that is currently in place. The fence stops short of the area where the tree was removed.

Exhibit 1, a picture that appears to be taken in 2004, also shows a fence in that location.

Again, while it is very difficult to discern much detail from the aerial photo taken in 2008, the image is not inconsistent with, and may show, a fence structure in that location. Likewise, the aerial photo taken in 2005 appears to show a fence in that location.

When comparing the fence in Exhibit 14 (taken recently) it is clear that the current fence is of a different design than the fence depicted in Exhibits 1 and 13b. Specifically, the fence in the earlier exhibits is made of lattice work, with a minimal superstructure at the top of the fence, while the fence depicted in Exhibit 14 is of solid planks with only a small amount of lattice work at the top, and a significant superstructure along the top. It is due to the superstructure that the fence can be seen in the 2010 aerial photo.

The aerial photo taken in 2010 distinctly shows a structure in the location of the current fence that is built in a manner that did not exist in 2008. Additionally, the structure appears to run further west than the fence depicted in Exhibits 1 and 13b.

It is a fair inference to draw from all the photos introduced that the fence between the properties existed as far back as 2004, but that the fence stopped short of its current westerly terminus.

It is a fair assumption to draw from the photos that the clearing of the tree in April of 2008 allowed the extension of the privacy fence to its current location. However, without knowing the date upon which the 2008 picture was taken, it is not possible to ascertain from the photos the date the rebuilt fence went into place. If the aerial photo was taken on April 26, the fence could have gone in any time thereafter.

It appears that the new privacy fence was placed in the same location as the original privacy fence, though the new fence is longer than the old.

The fence is not the only basis upon which Plaintiff lays her claims. Exhibits 15a and b show Roddy's use of the disputed property as if it was hers; parking cars, holding yard sales, maintaining the lawn and installing a driveway. Virtually every aerial photograph shows cars and other vehicles parked on the disputed property. The aerial photographs also show the paved driveway which lies on the disputed property being in existence as far back as 2005. A mature tree was removed by the Roddys from the disputed property on April 27, 2008.

There was no evidence presented by either party, that before the Carcamos' attempt to install the chain-link fence in 2023, that Carcamo or her predecessors in title had ever used the disputed property for any purpose, or maintained it in any manner. The property in question was exclusively used by Roddy.

There appears to be little dispute that the property line from the rear of the property up to the northern end of the privacy fence does not deviate significantly from the fence posts put in place in 2023 by the Carcamos. The exception would be in the area within about 10 feet of the northernmost point of the privacy fence.

Unlike the rear of the property, because the privacy fence is approximately four feet west of the surveyed lot line, the property from the southern end of the privacy fence to the roadway was in dispute. While Roddy has in recent years done some planting in the disputed area that runs between the end of the fence and the road, her use and possession of that portion of the property has not been of the magnitude of her use of the property within the privacy fence.

The trial court, however, concluded that regardless of whether the fence was originally constructed in 2004 or sometime thereafter, plaintiff had established a prima facie case that she acquired the disputed area under the doctrines of acquiescence and adverse possession and that defendant offered no evidence to refute plaintiff's evidence. Defendant's challenge on appeal regarding the construction date of the privacy fence does not refute the trial court's conclusion that regardless of when the privacy fence was constructed, plaintiff acquired the disputed area by her other unchallenged acts of possession and use of the property for at least 15 years.

Defendant also argues on appeal that the trial court erred by establishing the property line location north of the privacy fence consistent with defendant's own survey, which is essentially consistent with the existing wire fence. Defendant also challenges the trial court's order that the property line south of the privacy fence extends at an angle to meet the original property line at the road. Defendant argues that the trial court used its equitable powers to establish the property line without stating the equities underlying its decision. We disagree that the trial court erred.

A suit to quiet title to property is one of equity. MCL 600.2932(5); *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). "A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates." *Id*. (quotation marks and citation omitted). In this case, plaintiff initiated this action to quiet title to the property up to the boundary line west of her house that she had adhered to since 1983. She presented evidence that she had adhered to a property line 25 feet west of her house delineated by the wire fence at the northern end of the property line, the privacy fence near the middle of the property line, and the unfenced area extending south of the privacy fence to the road since 1983. Defendant presented evidence of a 2023 survey that indicated that the wire fence was accurate within inches, that the privacy fence was approximately four feet west of the surveyed property line and likewise, that the area claimed by plaintiff south of the privacy fence extended approximately four feet west of the surveyed property line. Plaintiff testified that from 1983 until early 2023, no owner of 591 South Grey Road challenged her ownership of the disputed area. Although defendant disputes when the privacy fence was installed, defendant did not refute

plaintiff's assertion that she had possessed the disputed area unchallenged since 1983.  The trial court therefore did not err by quieting title to the property in question in plaintiff's favor.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica